MICHAEL LYNCH, Respondent, *v.* THE METROPOLITAN ELEVATED RAILWAY COMPANY, Appellant.

Plaintiff purchased a ticket for a passage upon defendant's railway, and entered one of its cars; before reaching his destination he lost his ticket, and when he attempted to pass through the gate, from the station platform, he was stopped by the gate-keeper and told that he could not pass until he produced a ticket or paid his fare. He stated the facts of his purchase of a ticket and its loss, and insisted in passing out, but was pushed back by the gate-keeper, who sent for a police officer and ordered his arrest ; he was arrested, taken to the police station, where the gate-keeper made a complaint against him, and he was locked up over night. In the morning plaintiff was examined before a police magistrate, the gate-keeper appearing against him, and he was discharged. Defendant had given orders to its gate-keepers not to let passengers pass out until they either paid their fares or showed tickets. In an action for false imprisonment, *held*, that the detention was unlawful, that defendant was responsible for the acts of the gate-keeper ; and that plaintiff was entitled to recover.

(Argued June 28, 1882 ; decided October 10, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 10, 1881, which affirmed a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 24 Hun, 506.)

There was an action for false imprisonment. The material facts are stated in the opinion.

*R. E. Deyo* for appellant. The court erred in refusing to charge as requested, that the regulation of the defendant requiring passengers to produce and surrender a ticket or pay the legal fare before leaving a station was a reasonable regulation. (*Hibbard* v. *Erie R. R. Co.*, 15 N. Y. 455; *Vedder* v. *Fellows*, 20 id. 126, 130, 131, 132; *Hibbard* v. *N. Y. & Erie R. R. Co.*, 15 id. 463; *Weaver* v. *Rome, Watertown and Ogdensburgh R. R. Co.*, 3 T. & C. 272, 273; *Northern R. R. Co.* v. *Page*, 22 Barb. 132; *Townsend* v. *N. Y. Central & H. R. R. R. Co.*, 56 N. Y. 300.) The agent of the company was under no obligation to accept the statement of the passenger that he had lost his ticket. (*Townsend* v. *N. Y. Central & H. R. R. R. Co.*, 56 N. Y. 300.) If the passenger has lost his ticket it is his own fault, and the consequence must fall upon him and not upon the company. (*Standish* v. *Narragansett Steamship Co.*, 111 Mass. 512; 15 Am. Rep. 71.) A railway corporation has authority to make and carry into effect reasonable regulations for the conduct of all persons using the railway or resorting to its depots. (1 Redf. on Railways [3d ed.], 93; *Peck* v. *N. Y. Central & H. R. R. R. Co.*, 70 N. Y. 589, 590; *Bass* v. *Chicago and North-western R. R. Co.*, 36 Wis. 450; 17 Am. Rep. 500; *Hibbard* v. *N. Y. & Erie R. R. Co.*, 15 N. Y. 463; *Putnam* v. *Broadway & C. R. Co.*, 55 id. 113; Redf. on Railways [3d ed.], 87; *New York Central & Hudson River R. R. Co.*, 56 N. Y. 205; *Standish* v. *Narragansett Steamship Co.*, 111 Mass. 512; 15 Am. Rep. 71; Lindley on Partnership, vol. 1, p. 4; *Ritchie* v. *Ashbury Co.*, Law Rep., 7 Eng. and Irish App. 653; *Chilton* v. *London & Croydon Railway Co.*, 16 M. & W. 221.) It was error to charge that having arrived where the plaintiff desired to get out defendant had no right to detain him because he failed to pay his fare. (*Commonwealth* v. *Power*, 7 Metc. 596.) The court clearly erred in charging the jury that the same rule applies between a railroad company and a passenger as between a lawyer and his client. And that any detention in the former case would be equally unauthorized as in the latter. (*Willets* v. *Buffalo & Rochester R. R. Co.*, 14 Barb. 591; *Northern R. R.*

*Co.* v. *Page,* 22 id. 132; *Jencks* v. *Coleman,* 2 Sim. 221; *Hibbard* v. *N. Y. & Erie R. R. Co.,* 15 N. Y. 464; *Townsend* v. *N. Y. Central & H. R. R. R. Co.,* 56 id. 300; *Hubbard* v. *N. Y. & Erie R. R. Co.,* 15 id. 466; 3 Blackst. Com., chap. 1, p. 3; *Gyre* v. *Culver,* 47 Barb. 593–4.) It was error to charge the jury that it was not disorderly conduct to insist upon going out of the gate, and that this plaintiff had a right to use force in order to get out of the gate under the circumstances. (*Townsend* v. *N. Y. Central & H. R. R. R. Co., supra,* 56 N. Y. 301.) The court erred in refusing to charge as requested, that it was not within the scope of the gateman's employment, unless expressly instructed, to cause the plaintiff to be arrested and imprisoned, and that unless he had express instructions the defendant is not responsible for such arrest and imprisonment. (*Mali* v. *Lord,* 39 N. Y. 384. See, also, Story on Agency, § 456; *Isaac* v. *Third Ave. R. R. Co.,* 47 N. Y. 122; *Fraser* v. *Freeman,* 43 id. 566; *Thames Steamboat Co.* v. *Housatonic R. R. Co.,* 24 Conn. 40.)

*Chas. C. Smith* for respondent. A corporation is subject to the rights and duties and is liable in damages for breaches of its contracts or covenants and for damages resulting from trespass and torts committed by its agents the same as a natural person. (Field on Corp., § 1; 1 Potter on Corp., §§ 3, 10, 95.) Although every corporation has the right to make by-laws to regulate the management of its affairs and to fulfill the purposes of its institution, such by-laws must not be repugnant to the laws of the land, nor in excess of the powers specifically conferred. (Field on Corp., § 294; Add. on Torts [Wood's ed.], §§ 53, 54; 1 Potter on Corp., § 63; *Seneca Bank* v. *Lamb,* 26 Barb. 595; *People* v. *Throop,* 12 Wend. 183; *Dunham* v. *Rochester,* 5 Cow. 462; *Slee* v. *Bloom,* 19 Johns. 456; *People* v. *Medical Society, Erie,* 24 Barb. 570; *S. C.,* 32 N. Y. 187; *Hart* v. *Albany,* 9 Wend. 588; 1 Potter on Corp., §§ 63, 75.) Any by-law authorizing an infringement of personal rights or privileges secured to individuals by the Constitution of the State or of the general government would be null and void.

(Field on Corp., § 301; 1 Potter on Corp., §§ 71, 75, 76, 63; Ang. & Ames on Corp., §§ 333, 335; *Stuyvesant* v. *Mayor*, 7 Cow. 587; *Coates* v. *New York*, id. 604; *New York* v. *New York*, 3 Duer, 119; *Rowing* v. *Goodchild*, 2 Wm. Bla. 910; *Beckford* v. *Hood*, 7 Term R. 627; *Couch* v. *Steel*, 3 Ell. & Bl. 414; Add. on Torts [Wood's ed.], 60–62; *Bradley* v. *N. Y. & N. H. R. R. Co.*, 21 Conn. 294; *Florida, etc., R. R. Co.* v. *Pensacola and Ga. R. Co.*, 10 Fla. 145.) Plaintiff having provided himself with a ticket and having been permitted to enter the premises and car of the company, the plaintiff became a passenger of the defendant's, and was not a trespasser. (*Gordon* v. *The Grand Street and Newton R. R. Co.*, 40 Barb. 546; 1 Potter on Corp., § 487; *Buffit* v. *Troy & Boston R. R. Co.*, 40 N. Y. 168; *Yates* v. *Lounsbury*, 20 Johns. 47; *Allen* v. *Crofoot*, 5 Wend. 506; *Etchburg* v. *Levielle*, 2 Hilt. 40; *Coates* v. *Derby*, 2 N. Y. 507; 5 Denio, 95; 3 Bl. Com. 127, 137; 1 Chitt. Pl. 166, 167, 91; Steph. Pl. 17; Bouv. Law. Dict., tit. Trespass; Add. on Torts, Abr., 222.) Defendant's only remedy was an action to recover the amount of fare. (1 Potter on Corp., § 82.) A railway company cannot enforce a by-law, by detaining the traveler himself. (*Northern R. R. Co.* v. *Page*, 22 Barb. 130; *Jeffersonville, etc., R. R. Co.* v. *Rogers*, 28 Ind. 1; *Sunbolf* v. *Alvord*, 3 M. & W. 238; *Clarke* v. *Norrisville*, 1 Term R. 118; *Strode* v. *Deering*, Showers, 168; 1 Potter on Corp., § 81; *Hart* v. *Albany*, 9 Wend. 571; *Clark's Case*, 5 Rep. 64; id. 63; 8 id. 253; *Bab* v. *Clerk*, F. Moore, 411; 12 Mod. 686; 3 Salk. 76; *Bart* v. *Commonwealth*, 3 Penr. & W. 253.) The detention of plaintiff by the defendant, its agents and servants, at its station, and their refusal to allow him to leave the same, was unreasonable, without sufficient cause or excuse, in derogation of the laws of the State, and of plaintiff's rights and liberty, and constituted an arrest and false imprisonment, for which the defendant became liable in damages to the plaintiff. (Add. on Torts, Abr., 222, 231, 232; *Crowell* v. *Gleason*, 10 Me. 325; *Colter* v. *Lower*, 35 Ind. 285; 9 Am. Rep. 735; *Flenter* v. *Royle*, 1 Comp. 188; *Goff* v. *Great Northern R. R. Co.*,

30 L. J. Q. B. 55; 2 Add. on Torts [new 4th ed.], § 831; id. [Wood's ed.] 635, 637; *Pollet* v. *Long,* 56 N. Y. 200; *S. C.,* 3 Sup. Ct. 232; Add. on Torts, Abr., 6; Shearm. & Redf. on Neg., § 70, and cases cited.) When a person puts another in his place to do certain acts in his absence, he necessarily leaves him to determine for himself, according to his judgment and discretion, and to the circumstances and exigencies that may arise, when and how the act is to be done, and trusts for its proper execution, and is liable for the act both in the manner and occasion of doing it. (*Coates* v. *Darby,* 2 Comst. [N. Y.] 517; *Grobb* v. *Great Northern R. R. Co.,* 30 L. J. Q. B. 148; *Breidy* v. *Little Miami R. R. Co.,* 34 Barb. 249; 6 Am. Rep. 117; *How* v. *Newmarch,* 12 Allen [Mass.], 117; *Shea* v. *Sixth Ave. R. R. Co.,* 62 N. Y. 180; *Weed* v. *Panama R. R. Co.,* 17 id. 362; Story on Agency, § 308; *Blackstock* v. *N. Y., etc., R. R. Co.,* 1 Bosw. 77; *S. C.,* 20 N. Y. 48; *Thatcher* v. *Bank,* 5 Sandf. 121; 1 Potter on Corp., §§ 95, 102, 103, 113; Field on Corp., § 627; Wood's Law of Mast. & Serv. 562; *Peck* v. *N. Y. H. and N. Y. C. R. R.,* 6 T. & C. 436; 70 N. Y. 587; *Cohen* v. *Dry Dock, etc., R. R.,* 69 id. 170; *Rounds* v. *Del. & Lac. R. R. Co.,* 64 id. 129; Ang. & Am. on Corp., § 311; Shearm. & Redf. on Neg., § 135; Potter on Corp., §§ 103, 1061; Shearm. & Redf. on Neg., § 65; *Hamilton* v. *Third Ave. R. R. Co.,* 53 N. Y. 25; 11 Am. Rep. 405; *Higgins* v. *Watervliet Turnpike Co.,* 46 N. Y. 23; *Mott* v. *Consumers' Ice Co.,* 73 id. 543; *Ochsenbein* v. *Shapley,* 85 id. 214; *Peck* v. *N. Y. C. & H. R. R. R. Co.,* 70 id. 587; *Shea* v. *Sixth Ave. R. R. Co.,* 62 id. 180; *Phil. & Read. R. R. Co.* v. *Derby,* 14 How. [U. S.] 468; *Phil. R. Co.* v. *Straus Tow-boat Co.,* 23 id. 209; *Craft* v. *Allison,* 4 B. & Ald. 590; *Jackson* v. *Second Ave. R. R. Co.,* 47 N. Y. 274; Field on Corp., §§ 527, 530, 531; *Goddard* v. *Grand Trunk R. R. Co.,* 57 Me. 202; Wood's Law of Mast. and Serv. 562, 566; *Goff* v. *Gt. Nor. R.,* 30 L. J. Q. B. 148; *McManus* v. *Crickett,* 1 East, 106; 2 Add. on Torts [Wood's ed.], 636, 637; *Bass* v. *Chicago & N. W. R.,* 36 Wis. 450; *Croker* v. *C. & N. W. R.,* id.

657.) The liability of corporations for the tortious acts of their servants is the same in all cases as if they were natural persons, and is not affected by the fact that the acts shown are not within the legitimate scope of the powers attempted to be conferred upon the agent. (1 Potter on Corp., §§ 103, 104; *Lee* v. *Village of Sandy Hill,* 40 N. Y. 448; *Booth* v. *Farmers & Mech. Bank,* 50 id. 396; *N. Y. & N. H. R. R. Co.* v. *Schuyler,* 34 id. 30; *Phil., etc., R. R. Co.* v. *Quigley,* 21 How. [U. S.] 209; *Life Ins. Co.* v. *Mech. Fire Ins. Co.,* 7 Wend. 31; *Porter* v. *N. Y. C. R. R. Co.,* 34 Barb. 353; *Bissell* v. *Mich., etc., R. R. Co.,* 22 N. Y. 258.) The doctrine of *ultra vires* has no application in cases of tort. (*Booth* v. *Farmers & Mechanics' Bank,* 50 N. Y. 396; Field on Corp., §§ 317, 524; 1 Potter on Corp., §§ 96, 98, and cases cited : 1 Redf. on Railways, 514.)

EARL, J. In September, 1878, the plaintiff purchased a ticket for a passage upon defendant's railway from its Forty-second street station to its Rector street station and entered one of its cars. Before reaching his destination he lost his ticket, and when he attempted to pass from the station platform through the gate into the street, he was prohibited by the gate-keeper, and told that he could not pass until he produced a ticket or paid his fare. He explained that he had paid his fare and lost his ticket, and insisted upon passing out. He was pushed back by the gate-keeper, who refused to let him pass. He expostulated and insisted upon his right to pass, when the gate-keeper sent for a police officer and ordered his arrest. He was arrested and taken to a police station by the police officer, the gate-keeper going along and making complaint against him. He was locked up in the station-house over night. In the morning the gate-keeper appeared against him, and he was examined before a police magistrate and discharged. This action was afterward commenced to recover damages for the false arrest and imprisonment. He recovered a judgment which has, upon appeal, been affirmed.

We are of opinion that the trial judge was right in holding,

as matter of law, that the plaintiff's detention and arrest were illegal.

The defendant had the right to make reasonable rules and regulations for the management of its business and the conduct of its passengers. It could require every passenger before entering one of its cars to procure a ticket and to produce and deliver up the ticket at the end of his passage or again pay his fare. (*The Northern R. R. Co.* v. *Page*, 22 Barb. 130; *Hibbard* v. *The N. Y. & Erie R. R. Co.*, 15 N. Y. 455; *Vedder* v. *Fellows*, 20 id. 126; *Townsend* v. *The N. Y. C. & H. R. R. R. Co.*, 56 id. 295; 15 Am. Rep. 419.) The defendant had such a regulation, and no complaint can be made of that. But it had no regulation and could legally have none that a passenger, before leaving its cars or its premises, should produce a ticket or pay his fare, and if he did not, that he should then and there be detained and imprisoned until he did do so. At most the plaintiff was a debtor to the defendant for the amount of his fare, and that debt could be enforced against him by the same remedies which any creditor has against his debtor. If the defendant had the right to detain him to enforce payment of the fare for ten minutes, it could detain him for one hour, or a day, or a year, or for any other time until compliance with its demand. That would be arbitrary imprisonment by a creditor without process or trial, to continue during his will until his debt should be paid. Even if a reasonable detention may be justified to enable the carrier to inquire into the circumstances, it cannot be to compel payment of fare. The detention here was not to enable the gate-keeper to make any inquiry, but simply to compel payment. He was absolutely informed that he could not pass out without producing a ticket or paying his fare. This is not like the cases to which the learned counsel for the defendant has called our attention, where railroad conductors have been held justified in ejecting passengers from cars for refusing to produce tickets or pay their fares. A passenger has no right to ride in a car without payment of his fare, and if he refuses to pay, the railroad company is not bound to carry him, and may at a proper place and in a proper manner re-

move him from the car, but it could not imprison him in a car until he paid his fare, for the purpose of compelling payment.

These views have the sanction of very high authority. In *Sunbolf* v. *Alford* (3 M. & W. 248), it was held that an innkeeper could not detain the person of his guest in order to secure payment of his bill. Lord ABINGER said: "If an innkeeper has a right to detain the person of his guest for the nonpayment of his bill, he has a right to detain him until the bill is paid, which may be for life; so that this defense supposes that by the common law a man who owes a small debt for which he could not be imprisoned by legal process may yet be detained by an innkeeper for life. The proposition is monstrous * * * *. Where is the law that says a man shall detain another for his debt without process of law ?" In *Chilton* v. *The London, etc., Railway Co.* (16 M. & W. 212), the defendant was organized under an act conferring much broader powers than are possessed by the defendant in this case, and yet it was held that it could not arrest a passenger for refusing to pay a fare which it was entitled to demand. In *Standish* v. *Narragansett Steamship Co.* (111 Mass. 512), the plaintiff purchased a ticket before going upon the defendant's steamboat for a passage from Fall River to New York. The defendant's regulation was that the passenger should, upon leaving the boat at the end of his passage, deliver up his ticket or pay his fare. When the plaintiff reached New York, he found he had lost his ticket, and when he attempted to leave the boat he was prohibited and told that he could not pass until he produced a ticket or paid his fare. He was detained two hours and then, under protest, paid his fare and was permitted to leave the boat. He sued the company for false imprisonment and recovered $50. The trial judge charged the jury that "the law gave the defendant a lien on the baggage of the plaintiff but not on his person; that they had no right to detain him until he did pay his fare or give up a ticket, or to compel him to pay his fare or give up a ticket, but that, if he knew that he was to give up his ticket before leaving the boat, the defend-

ant had a right, if he did not give it up or pay his fare, to detain him for a reasonable time to investigate on the spot the circumstances of the case ; and if the jury found that the defendant detained him for the purpose of compelling him to pay his fare or to give up his ticket, or detained him for the purpose of investigating his case, an unreasonable time or in an unreasonable way he was entitled to recover.'' The plaintiff appealed, alleging for error that the judge erred in charging the jury that the defendant had the right to detain him a reasonable time to investigate the circumstances of the case. No portion of the charge was condemned, and the portion excepted to by the plaintiff was held to be correct.

A municipal corporation authorized to make by-laws and pass ordinances, and inflict penalties for their violation, cannot enforce obedience to them by imprisonment unless expressly authorized so to do by statute. (Potter on Corp., § 81; *Clark's Case*, 5 Coke's Rep. 64.)

It was argued before us, on behalf of the defendant, that the ticket sold to the plaintiff was the property of the defendant, intrusted to him for a special purpose, and that it had the right to prevent him, at the end of the journey, from carrying away this property. I am not quite ready to assent that after the defendant sold the ticket to the plaintiff it retained any right of property therein. But even if it did, it did not detain him on that ground; and he did not then have the ticket in his possession or under his control, and hence a detention to compel him to deliver it up could not, on that ground, be justified.

There was no error in the charge of the judge in reference to the branch of the case we have thus far considered. The counsel of the defendant excepted to that portion of the charge of the judge wherein he said in substance that the defendant had no more right to detain plaintiff until he paid his fare than a lawyer would have to detain in his office a client who consulted him and refused to pay his fee. There was no error in this illustration. The detention in either case is unlawful, and is condemned in the law upon precisely the same principles.

There was no error in refusing to charge the request made by defendant's counsel that " the regulation of the defendant requiring passengers to produce and surrender a ticket or pay the legal fare before leaving the station was a reasonable regulation." It is true, that whether a regulation is a reasonable one or not is a question of law for the court, but this request reached too far. It implied that the passenger was to remain in the station and submit to indefinite detention there until he paid his fare, and such a regulation would not be reasonable.

It now remains only to be considered whether the defendant was responsible for the acts of the gate-keeper.

When the plaintiff attempted to pass through the gate the gate-keeper told him that in resisting and detaining him he was simply doing his duty, and he testified that in all he did he considered that he was acting in the line of his duty. The defendant's president testified that there was a rigid rule of the company that passengers were required to show at the gate that they had paid their fare in order to be able to pass out; that when they came to the gate the rule was that the gate-keeper was not to let them go out till they either paid their fare or showed a ticket, and that the instructions to the gate-keepers were to collect tickets or fares. From these facts and all the circumstances of the case, if it is not entirely plain, the jury could at least find that the company expected the gate-keeper would detain a passenger who could not or would not produce a ticket or pay his fare at the gate, and the gate-keeper clearly understood that it was his duty so to do. In any thing that he did, he did not act for any purpose of his own, but to discharge what he believed to be his duty to his principal. It matters not that he exceeded the powers conferred upon him by his principal, and that he did an act which the principal was not authorized to do, so long as he acted in the line of his duty, or, being engaged in the service of the defendant, attempted to perform a duty pertaining, or which he believed to pertain, to that service. He detained the plaintiff at the station, caused his arrest, went with the police-officer to the police station, there made a complaint, and then the next morning appeared before the

police magistrate and renewed his complaint.    These were successive steps taken by the gate-keeper to enforce the payment of the fare by the plaintiff or to punish him for refusing to . pay it, and for all that he did the defendant is responsible. The principles upon which the liability of a master rests in such a case have been so fully .and plainly laid down in recent cases in this court that a restatement of them now would serve no useful purpose. (*Rounds* v. *Del., Lack. & West. R. R. Co.*, 64 N. Y. 129; 21 Am. Rep. 597; *Mott* v. *The Consumers' Ice Co.*, 73 N. Y. 543; *Devine* v. *Mills*, decided Oct. 10, 1882.*).

The judgment should be affirmed, with costs. ·

All concur, except FINCH, J., dissenting, and RAPALLO, J. not voting.

Judgment affirmed.

---

* This case was decided without an opinion; it appears in the Mem., *post*, p. 637.