## City Court.

*Trial Term—February*, 1885.

## JOHN H. CORWIN *against* THE LONG ISLAND RAILROAD COMPANY.

A gateman employed to see that passengers deposit their tickets at the terminus of a railroad and to prevent the exit of passengers who omit to make such deposit, has no constabulary right to pursue and bring back a passenger failing to comply with the regulations after the passenger has been allowed to depart from the depot grounds, nor has the gateman the power to direct a police-man to bring the offender back. Such acts are in excess of the gateman's implied authority, and do not bind the railroad com-pany unless it expressly authorizes them. The gateman, by virtue of his position, is merely authorized to prevent infractions of the regulations and not to punish past transgressions.

Corwin *v.* Long Island R. R. Co.

On July 12, 1883, the plaintiff became a passenger on the defendant's cars, on a trip from Bay Ridge to Coney Island. On passing through the gate at Bay Ridge the ' ticket was punched by the gateman, and while upon the cars it was punched by the conductor. Upon the arrival of the cars at Coney Island the plaintiff could not find his ticket, and was in consequence unable to comply with the regulation of the defendant requiring passengers leaving the cars to deposit their tickets in a box on passing through the gateway leading from the car station. This circumstance led to a conversation between the plaintiff and the gateman concerning the ticket, in which it was suggested to send for the conductor. The conductor came, but said he did not recognize the plaintiff. The plaintiff thereupon started for the gate ; the gateman said the plaintiff could not go through, and the latter, according to his own evidence, said : " I thought I would (go through), so I walked on my usual gait and got through and upon the portico of the Manhattan Hotel, and I was walking along there when the gateman with whom I had most of the conversation called to the policeman, saying : ' Arrest that man ; stop him, he has got through without depositing a ticket.' . . . . Then the policeman called me and said : ' You can't go through here without depositing your ticket. You must come back with me.' I said : ' You better be careful. I know my rights and how to protect myself.' He said : ' You will have to come back with me.' I didn't go back willingly, and he pulled me back and took me through the gateway. Then the gateman shut the gate and said : ' Go in there, and you will stay there until you produce your ticket or buy one.'" Finally the policeman formally arrested the plaintiff, took him before a justice, where an informal examination was had and the plaintiff was discharged.

The plaintiff also testified that there was no restraint or force used against him until after he had got out of the gateway and was upon the piazza of the Manhattan Hotel.

He said, "I had passed through the piazza of the hotel before any one touched me ; the first person who touched me was the policeman."

This is substantially all the evidence bearing upon the question of law which will presently be considered. The plaintiff has sued the defendant for assault and false imprisonment. Upon the close of the plaintiff's case, developing the above facts, the defendant moved to dismiss the complaint, on the ground that the defendant, not having authorized the wrongs complained of, is not responsible to the plaintiff for them.

*H. S. Clark*, for plaintiff.

*A. C. Chapin*, for defendant.

McADAM, Ch. J.—A carrier is undoubtedly responsible for injuries inflicted upon passengers by servants engaged in the performance of duties, within the general scope of their employment, whether the particular act was or was not authorized by the master. The question in such cases is whether the servant was, when he inflicted the injury, acting within the line of his duties, and not whether the particular act was authorized. If, however, the servant goes beyond the range of his employment, and does an act injurious to another, the agent is liable, but the master is not. These rules are elementary. In Lynch *v.* Metropolitan E. R. R. Co. (90 *N. Y.* 77), it appeared that the defendant had given orders to its gatekeepers not to let passengers pass out until they either paid their fares or deposited their tickets, and the gatekeeper in detaining the plaintiff for non-observance of this rule was, in the language of the court of appeals, "simply doing his duty," and the president of the company confirmed this fact in his testimony. The court held that the regulation was unreasonable, and that the defendant was liable. If the gatekeeper, in the present case, had unreasonably de-

Corwin v. Long Island R. R. Co.

tained the plaintiff, and had by force prevented him from getting out of the gate and had then and there caused his arrest for not depositing the ticket, the case of Lynch v. Metropolitan E. R. R. Co. (supra) would have been applicable, the act would have been within the scope of the gatekeeper's authority, and the defendant would have been liable ; but the facts of the present case are different. The plaintiff was allowed to pass through the gate and get upon the piazza of the Manhattan Hotel. When he arrived there, he had ceased to be a passenger of the defendant ; it was no longer liable for his safety. He had passed from the grounds of the defendant, and it owed him no duty. He was not under the control of the defendant ; it had no authority over him. Whatever the servants of the defendant did after this, was not the act of the corporation, but the tortious act of the individual, for which he is alone responsible    (See 15 Am. & Eng. R. R. Cases, 158).

The liability of a carrier of passengers certainly terminates when the passenger leaves the company's terminus in safety. The defendant had no power to bring the plaintiff to back to its gateway or depot. It never authorized the gateman or policeman to bring him back, and it will not be inferred, in the absence of affirmative proof, that the defendant authorized the gateman to do an act which the defendant itself had no right to perform (Mali v. Lord, 39 N. Y. 381). In other words, inference will not supply proof of the authority required to hold a corporation liable for acts of the character complained of. The functions of the gateman were to be exercised within the gates of the defendant ; he was to see that passengers deposited their tickets before they passed out of the depot. He was not clothed with the constabulary power of pursuing as offenders persons who violated the company's regulations. He was employed to prevent infractions and not to punish past transgressions. There is no proof in the present case that the police officer had any authority

whatever from the defendant, and as the gateman did not bind the company by his unauthorized act, his direction to the officer cannot operate to bind it. Where, therefore, a station-master arrested a railway passenger, in charge of a horse, for not paying for its transportation, and the railway company could not lawfully arrest a person for such non-payment, but only detain the property, it was held that as the station-master exceeded his authority, the company was not responsible (Poulton *v.* Lond. & S. W. R. R. Co., 2 *L. R. Q. B.* 534). The theory of the defendant's liability is that the act complained of was done by its direction and command, and so, in reality as well as in law, was its own act through the instrumentality of another. But there is an entire absence of proof that the defendant ever authorized the acts complained of or ratified them afterwards. A corporation should not be made a trespasser against its will. If it had employed the gateman to do the acts complained of, the defendant would undoubtedly have been liable for the manner in which they were performed.

But, as before suggested, the acts complained of were outside of the scope of the gatekeeper's authority, and were not committed in the necessary performance of the limited duties with which he was charged, and there is no legal principal upon which the defendant can be held responsible for them. It follows, therefore, that the complaint must be dismissed.

Affirmed by city court general term.