PALMERI *v.* MANHATTAN R. CO.

*(Supreme Court, General Term, Second Department.* May 11, 1891.)

1. MASTER AND SERVANT—TORTS OF SERVANT—SLANDER.

Plaintiff purchased a ticket of defendant's agent, giving in payment a coin which the agent declared was counterfeit, and required her to take back; failing which the agent denounced her as a counterfeiter and a common prostitute, and detained her in the station over half an hour, awaiting arrest by an officer, which was not made. *Held,* that the defendant was liable, as well for the abusive language of its servant, the agent, as for the false imprisonment of the plaintiff, the injury being one and the same transaction; and that it was proper for the complaint to set out such abusive language as incidental to the arrest, the same not being a naked slander of the servant for which the master was not liable.

2. WITNESS—IMPEACHMENT—CONTRADICTORY STATEMENTS.
    A witness may be asked if he did not make a statement to a certain person conflicting with his testimony given on the trial, and, if he denies it or states that he does not remember it, proof may be given that he did make such a statement.
3. SAME—HABITUAL LITIGATION.
    The fact that plaintiff is an habitual litigant is no ground of impeachment as a witness.

Appeal from circuit court, Kings county.

Action by Amanda Palmeri against the Manhattan Elevated Railway Company. From a judgment entered on a verdict for the plaintiff, and from an order denying defendant's motion for a new trial, defendant appears. ·

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Davies & Rapallo,* (*Julien T. Davies* and *Brainard Tolles,* of counsel,) for appellant.   *B. F. Strauss,* (*James D. Bell,* of counsel,) for respondent.

BARNARD, P. J.   The rule is established by the court of appeals that a carrier of passengers undertakes to protect the passengers against the neglect and willful misconduct of its servants while engaged in performing the duty which the carrier owes to the passengers. *Lynch* v. *Railroad Co.,* 90 N. Y. 77; *Stewart* v. *Railroad Co.,* Id. 588; *Dwinelle* v. *Railroad Co.,* 120 N. Y. 117, 24 N. E. Rep. 319.   The facts proven were that the plaintiff purchased a ticket of one Dayton, the agent of the defendant, at its station at Forty-Seventh street and Third avenue, New York.   She paid the agent a quarter of a dollar, and received 20 cents change.   She had some trouble in getting the change, as her right to it was disputed by the agent, and finally it was given so rudely that part of it fell upon the floor.   The plaintiff picked it up, and deposited her ticket in the box, and went upon the platform.   The agent then went to her, and demanded another quarter, alleging that the one she had given him was counterfeit.   She asserted her belief in its being good coin, and refused to return the change.   The agent then detained her for over half an hour, and during this interval called her a counterfeiter and a passer of bad coins, and that she was a common prostitute.   Assuming these facts to be true, the plaintiff can maintain her action against the company.   The jury has passed upon the facts, and the evidence given by the agent and two other persons who were present is not such as to call for a reversal.   The agent states that the plaintiff's money was bad, and that she was detained "from ten to fifteen minutes."   The money was not produced, the agent testifying that he "threw it into the stove."   One of the persons who were present did not see the plaintiff give the quarter to the agent.   The other witness, Olson, testifies that the agent told the plaintiff when she left the quarter that it was not good, and she said it was good, and received the ticket.   All the other witnesses agree that she received the change and ticket before any objection was made to the genuineness of the money.   The principle established by the cases is broad enough to include not only the false imprisonment, but the language used while she was under duress.   The injury is one; it grew out of the same transaction; it happened at the same time.   The arrest was made by the same agent who uttered the bad language, and this was spoken while the plaintiff was detained against her will, and helpless.   The cases above cited, and the cases cited in the opinion, include insult as well as actual violence.   The complaint therefore properly set forth the arrest, and the incidents thereto; and the proof given on the trial, which included this bad language, was properly received.   The cases cited, therefore, which show that a corporation cannot utter slander unless it authorizes slander, or the same is spoken by an agent within the general scope of his authority, have no relevancy to the case presented by the appeal.   There was a contract for the carriage of the plaintiff as a passenger.   The jury had found that she paid her fare, and was given a ticket, by which she was allowed to go upon the platform to be carried when the train came. ˴ She was prevented solely by the

unwarranted act of the agent of the defendant. Dayton was a witness for defendant. He was asked if he had not requested one Murphy to "help him out," and to that end to give in his name as a witness to the defendant or to the agent. Murphy was permitted to so testify, and this was properly received as an impeaching question. When a witness states a fact, he may be asked if he has not made a statement at war with his testimony upon a particular occasion and to a particular person. If he deny it, or if he do not remember it, proof may be given that the witness did make such statement. Thus the witness goes to the jury with his evidence weakened, it may be, by the impeachment. This rule of evidence is applied in a large proportion of trials of issues of fact.

The proof that the plaintiff was an habitual litigant was properly rejected. It was not an issue in the action, and it can only be admitted as tending to impeach the plaintiff as a witness. A love of litigation is not recognized as an impeachment of a witness. It cannot be assumed without proof that the numerous litigations which the plaintiff has had with parties other than the defendant were not meritorious. An admission of such testimony would involve an inquiry into each litigation, and even then the evidence would be inconclusive. A party may bring an action without merit, and that fact of itself would involve no turpitude. The judgment should therefore be affirmed, with costs.