WALTER S. CRAVEN, Respondent, *v.* LYMAN G. BLOOMINGDALE, Appellant.

171
d 77 AD 439|
    107|

MASTER AND SERVANT — LIABILITY OF MASTER FOR ILLEGAL ARREST CAUSED BY HIS SERVANT. While a master is liable in compensatory damages for an illegal arrest caused by his servant, if his manner of conducting business justified the jury in believing that the servant in causing such arrest was acting within the scope of his employment and discharging the ordinary duties imposed upon him, he cannot be held liable for punitive or vindictive damages by reason of wanton, oppressive or malicious acts of the servant, unless there is proof to implicate him and make him *particeps criminis* of his servant's acts; and in an action brought against a master for an illegal arrest caused by his servant, it is reversible error for the trial court, after instructing the jury as to the law of compensatory damages, to instruct them that they had also the power, if they

thought proper, to award punitive or vindictive damages in addition to the amount fixed by them for compensatory damages, without further instructing them that such damages should not be awarded unless there was proof showing that the acts of the servant were wanton, oppressive or malicious and that the master was implicated with the servant therein, or had either expressly or impliedly authorized or ratified them.

*Craven* v. *Bloomingdale,* 54 App. Div. 266, reversed.

(Argued May 14, 1902; decided June 10, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 20, 1900, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Otto Horwitz* for appellant. Defendant's driver had no authority, express or implied, to cause the arrest of the plaintiff and the defendant is not responsible for his acts in that behalf. (*Allen* v. *L. & S. W. Ry. Co.,* L. R. [6 Q. B.] 65; *Mulligan* v. *N. Y. & R. B. R. R. Co.,* 129 N. Y. 506; *Palmeri* v. *M. Ry. Co.,* 133 N. Y. 261; *Mali* v. *Lord,* 39 N. Y. 381; *Cosgrove* v. *Ogden,* 49 N. Y. 255; *Mallach* v. *Ridley,* 43 Hun, 346; *Rounds* v. *D., L. & W. R. R. Co.,* 64 N. Y. 129; *Farrell* v. *Friedlander,* 63 Hun, 254; *Kirk* v. *Garrett,* 84 Md. 383; *Porter* v. *C. I. R. & P. R. Co.,* 41 Iowa, 350.) The driver in procuring the plaintiff's arrest was acting not for the defendant but to protect himself from liability for the stove under his contract with the defendant, and the latter is, therefore, not liable. (*Rounds* v. *D., L. & W. R. R. Co.,* 64 N. Y. 129; *Mott* v. *C. I. Co.,* 73 N. Y. 543; *Montgomery* v. *Sattirano,* 16 App. Div. 95; *Lafitte* v. *N. O., etc., R. R. Co.,* 42 La. Ann. 34.) The court erred in charging the jury that they might give punitive damages, as the arrest was the personal wrong of the servant and not of the master. (*Cleghorn* v. *N. Y. C. & H. R. R. R. Co.,* 56 N. Y. 44; *Wright* v. *G. F. R. R. Co.,* 24 App. Div. 617;

*Eddy* v. *S. R. T. Co.*, 50 App. Div. 109; 1 Sedg. on Dam. [8th ed.] § 378.)

*John W. Brainsby* for respondent.  The defendant's driver caused the plaintiff to be arrested while acting within the scope of his employment, and while engaged in the transaction of his master's business. (*Mott* v. *C. I. Co.*, 73 N. Y. 543; *Ochsenbein* v. *Shapley*, 85 N. Y. 214; *Poucher* v. *Blanchard*, 86 N. Y. 256; *Lynch* v. *M. Ry. Co.*, 90 N. Y. 77; *Mali* v. *Lord*, 39 N. Y. 381; *Dupre* v. *Childs*, 52 App. Div. 306; *Palmeri* v. *Met. Ry. Co.*, 133 N. Y. 261; *Bank of N. S. W.* v. *Owston*, 40 L. T. R. 500.)  The driver procured the plaintiff's arrest for the purpose of getting back the oven, the substance of the charge being a theft. (*Lynch* v. *M. Ry. Co.*, 90 N. Y. 77.)  The defendant's exceptions to the charge of the learned trial justice, and to his refusal to charge as requested were not well taken. (*Voltz* v. *Blackmar*, 64 N. Y. 440; *Brown* v. *Chadsey*, 39 Barb. 253; *Kolzen* v. *B. & S. A. R. Co.*, 1 Misc. Rep. 148; *Cleghorn* v. *N. Y. C. & H. R. R. R. Co.*, 56 N. Y. 44.)

BARTLETT, J.  We are of opinion that the learned trial judge failed to instruct the jury properly as to the law of punitive or vindictive damages.

A brief statement of the facts is necessary in order to present the legal question involved.  The defendant is the proprietor of a department store in the city of New York, under the firm name of Bloomingdale Brothers.  In the conduct of the business a large number of wagons, owned by defendant, are used in delivering goods purchased.  The driver of the wagon involved in this action to recover damages for false imprisonment was employed under a written contract which authorized the defendant to charge him and deduct from his wages any money, or the value of any merchandise, which might be lost, damaged, destroyed or stolen after being placed in his charge.  The driver also gave a bond with surety under this contract.

The plaintiff purchased an article which, on delivery, proved

unsatisfactory.  It was returned and another sent in exchange. Full payment had been made on the original purchase, and on the second article a small balance was due defendant.  An error was made in defendant's store by which the driver was required to collect the full price of the article and not the balance actually due.  The driver, on delivering the second article, insisted on full payment, or a return of the property. An altercation ensued between the plaintiff and the driver, and as the latter was denied full payment, or the return of the property, he sent out for a policeman and the result was that plaintiff was arrested, taken to the police station and on a statement of the facts at once discharged.  The matter being brought to defendant's attention, he said he "was sorry that such a thing had happened" and asked what he could do. The plaintiff demanded the return of his money and stated he desired to have no further business with the firm.  This action was then commenced and the jury rendered a verdict for $1,250.  The Appellate Division affirmed the judgment entered upon this verdict.

We have here presented the question as to the proper measure of damages in the case of a merchant whose servant, in the delivery of goods, causes the illegal arrest of a customer. The fact that the master was not present when the arrest was made does not necessarily absolve him from liability.  If, on the evidence, the jury could find that the master authorized the arrest, or subsequently ratified it, he must respond in damages.  In the case before us, it is not claimed the master directly authorized the arrest of the plaintiff, or ratified it when brought to his attention.  It was, however, a question for the jury to determine, if the evidence warranted it, whether the manner in which the defendant conducted his business, through the intervention of the driver, constituted such a system as to render the act of the driver the act of the master.

After the trial judge had completed his main charge, he took up the plaintiff's requests, and said: "I do not think I made it very clear to the jury — the distinction between compensatory and punitive damages; it is as follows: Damages in an

action for false imprisonment, for humiliation, insult and wounded sensibilities are regarded in law as compensatory damages. If you find for the plaintiff, when you have reached some sum — made up your mind, some sum that you think is reasonable and right in the way of compensatory damages, then you have the power, if you think proper, to add to that some sum by way of punitive or vindictive damages. But your verdict will be an aggregate sum."

At the close of the charge the defendant's counsel excepted to that portion of it in which the court said that it was within the province of the jury to give punitive or vindictive damages; also, where the court said that the jury have the right to add a sum for punitive damages.

The defendant's fifth request to charge reads: "That if the jury finds in favor of the plaintiff, they may not award punitive damages." The court refused to so charge and an exception was taken.

The learned Appellate Division placed its affirmance of the judgment of the Trial Term upon the rule laid down in *Lynch* v. *Metropolitan El. Ry. Co.* (90 N. Y. 77), which was an action for false imprisonment, and quoted the language of the court in that case as follows: "It matters not that he (the servant) exceeded the powers conferred upon him by his principal, and that he did an act which the principal was not authorized to do, so long as he acted in the line of his duty, or, being engaged in the service of the defendant, attempted to perform a duty pertaining, or which he believed to pertain, to that service. He detained the plaintiff at the station, caused his arrest, went with the police officer to the police station, there made a complaint, and then the next morning appeared before the police magistrate and renewed his complaint. These were successive steps taken by the gate-keeper to enforce the payment of the fare by the plaintiff, or to punish him for refusing to pay it, and for all that he did the defendant is responsible." The Appellate Division then said: "In the case before us, the goods were delivered to the driver under such circumstances as authorized him not only

to protect the property of the master, but to do what he believed to be his duty to his principal with reference to that property, and we think the case falls directly within the rulings in *Lynch* v. *Metropolitan El. Railway Co.* The acts of Blaut (the driver) were quite similar to those committed by the servant of the railway company in the case last cited with an unimportant exception. According to Blaut's own testimony the arrest was made and the charge preferred in order to get back the merchandise, and the substance of the charge was a theft. It would scarcely be disputed that if this article had been taken from the wagon while in charge of Blaut an arrest caused by him of the person taking it would have been an act performed in the course of his duty to his employer for the protection of the employer's property, and the character of the act in this case does not differ materially from that in the case supposed, although Blaut swears that he stated to the plaintiff, 'I have got to have the stove or the money, because I am responsible for it.' The legal quality of his act does not depend upon his assertion but upon his relation to his master. It is quite evident that he believed it to be his duty to cause the arrest, and his master placed him in charge of the merchandise under such circumstances as would authorize an implication of authority to do what was proper or necessary in the exercise of his judgment to protect the property intrusted to him."

We are unable to see the similarity between these two cases. The gatekeeper in the case cited rested under the duty to collect a ticket before a passenger was allowed to pass out. The passenger claimed that he had lost his ticket, and the gatekeeper assumed it to be his duty to detain him and prosecute him under the circumstances. The case at bar presents a very different situation. The driver's remark, "I have got to have the stove or the money, because I am responsible for it," should be considered by the jury in determining whether the driver acted for the defendant or himself. If the jury are to pass upon the question whether a system existed in defendant's business authorizing this arrest, they must also consider

the circumstances under which the driver was employed. He was required to give security on entering his employment and was personally liable to his employer for the goods intrusted to his care or the money called for by his list. Undoubtedly, in the case supposed by the Appellate Division of an article taken from the wagon by a thief while passing along the street, the driver, whether acting in his own behalf or that of his master, would be justified in pursuing the thief and causing his arrest.

We are of the opinion that the jury retired without an accurate conception of the rule of damages in actions for false imprisonment. It is undoubtedly the rule that the master is liable in compensatory damages if his manner of conducting business justified the jury in believing that the servant was acting within the scope of his employment and discharging the ordinary duties imposed upon him.

The case at bar is clearly distinguishable from the recent case of *Stevens* v. *O'Neill* (51 App. Div. 364; affirmed in 169 N. Y. 375). In that case the plaintiff had been arrested in the store of the defendant under circumstances peculiarly distressing and humiliating. VAN BRUNT, P. J., in writing for the Appellate Division, said: " Although there was no evidence of any express malice against the plaintiff individually, the act was done in pursuance of a system which had been adopted in that store, and if this system was such as to place an innocent customer in the position in which the plaintiff's evidence showed that she was placed, the jury had the right to say that the results of this system were of such a character as to require rebuke by way of punitive damages in order that innocent people should not be placed in the position which this plaintiff was placed without any fault on her part."

The above case, and other cases of like character, involving the conduct of retail stores, disclose a detective system which authorized officers and others in the employ of merchants, to subject customers suspected of theft to personal search and other indignities. A system was thus established

which made the acts of those effecting the arrest clearly those of the master. The case at bar is distinguishable from this line of authorities.

In *Voltz* v. *Blackmar* (64 N. Y. 440), Judge ANDREWS (p. 447) uses this language: " In punitive actions, as they are sometimes termed, such as libel, assault and battery and false imprisonment, the conduct and motive of the defendant is open to inquiry with a view to the assessment of damages; and if the defendant, in committing the wrong complained of, acted recklessly or willfully or maliciously, with a design to oppress or injure the plaintiff, the jury, in fixing the damages, may disregard the rule of compensation, and beyond that may, as a punishment to the defendant and as a protection to society against the violation of personal rights and social order, award such additional damages as in their discretion they may deem proper. The same rule has been held to apply in the case of willful injury to property and in actions of tort founded upon negligence amounting to misconduct and recklessness. (*Tillotson* v. *Cheetham*, 3 Johns. 56; *King* v. *Root*, 4 Wend. 113; *Tifft* v. *Culver*, 3 Hill, 180; *Cook* v. *Ellis*, 6 Hill, 466; *Burr* v. *Burr*, 7 Hill, 207; *Taylor* v. *Church*, 8 N. Y. 460; *Hunt* v. *Bennett*, 19 N. Y. 173; *Millard* v. *Brown*, 35 N. Y. 297.) "

In *Cleghorn* v. *N. Y. C. & H. R. R. R. Co.* (56 N. Y. 44) the question involved was that of the negligence of an employee, and CHURCH, Ch. J., said : " For the purposes of this case the following rule may be laid down as fairly deducible from the authorities, viz. : For injuries by the negligence of a servant while engaged in the business of the master, within the scope of his employment, the latter is liable for compensatory damages, but for such negligence, however gross or culpable, he is not liable to be punished in punitive damages unless he is also chargeable with gross misconduct. * * * Something more than ordinary negligence is requisite; it must be reckless and of a criminal nature, and clearly established."

In *Lake Shore, etc., R. Co.* v. *Prentice* (147 U. S. 101)

the law of punitive damages is exhaustively discussed. Mr. Justice GRAY, writing for the court, said : " The single question presented for our decision, therefore, is 'whether a railroad corporation can be charged with punitive or exemplary damages for the illegal, wanton and oppressive conduct of a conductor of one of its trains towards a passenger. * * * . In this court, the doctrine is well settled that in actions of tort, the jury, in addition to the sum awarded by way of compensation for the plaintiff's injury, may award exemplary, punitive or vindictive damages, sometimes called smart money, if the defendant has acted wantonly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations. But such guilty intention on the part of the defendant is required in order to charge him with exemplary or punitive damages. (*The Amiable Nancy*, 3 Wheaton, 546, 558, 559 ; *Day* v. *Woodworth*, 13 How. [U. S.] 363, 371 ; *Phil., etc., R. R. Co.* v. *Quigley*, 21 How. [U. S.] 202, 213, 214 ; *Milwaukee & St. Paul Railway Co.* v. *Arms*, 91 U. S. 489, 493, 495 ; *Missouri Pacific Railway Co.* v. *Humes*, 115 U. S. 512, 521 ; *Barry* v. *Edmunds*, 116 U. S. 550, 562, 563 ; *Denver & Rio Grande Railway* v. *Harris*, 122 U. S. 597, 609, 610 ; *Minneapolis & St. Louis Railway Co.* v. *Beckwith*, 129 U. S. 26, 36.) Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent, within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent on the part of the agent. This is clearly shown by the judgment of this court in the case of *The Amiable Nancy* (3 Wheaton, 546). * * * No doubt a corporation, like a natural person, may be held liable in exemplary or punitive damages for the act of an agent within the scope of his employment, provided the criminal intent, necessary to warrant the imposition of such damages, is

brought home to the corporation. (*Caldwell* v. *N. J. Steamboat Co.*, 47 N. Y. 282; *Bell* v. *Midland Railway Co.*, 10 C. B. [N. S.] 287; *S. C.*, 4 Law Times [N. S.], 293.) Independently of this, in the case of a corporation, as of an individual, if any wantonness or mischief on the part of the agent, acting within the scope of his employment, causes additional injury to the plaintiff in body or mind, the principal is, of course, liable to make compensation for the whole injury suffered. (*Kennon* v. *Gilmer*, 131 U. S. 22; *Meagher* v. *Driscoll*, 99 Mass. 281, 285; *Smith* v. *Holcomb*, 99 Mass. 552; *Hawes* v. *Knowles*, 114 Mass. 518; *Campbell* v. *Pullman Car Co.*, 42 Fed. Rep. 484.)"

The learned judge states in this connection that the law applicable to this case has been found nowhere better stated than in *Hagan* v. *Providence & Worcester Railroad Co.* (3 R. I. 91). In that case it is stated (p. 91): "In cases where punitive or exemplary damages have been assessed, it has been done, upon evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amounted to criminality, which for the good of society and warning to the individual, ought to be punished. If in such cases, or in any case of a civil nature, it is the policy of the law to visit upon the offender such exemplary damages as will operate as punishment and teach the lesson of caution to prevent a repetition of criminality; yet we do not see how such damages can be allowed, where the principal is prosecuted for the tortious act of his servant, unless there is proof in the cause to implicate the principal and make him *particeps criminis* of his agent's act. No man should be punished for that of which he is not guilty. * * * But where the proof does not implicate the principal, and however wicked the servant may have been, the principal neither expressly nor impliedly authorizes or ratifies the act, and the criminality of it is as much against him as against any other member of society, we think is is quite enough that he shall be liable in compensatory damages for the injury sustained in consequence of the wrongful act of the person acting as his servant."

It is to be observed that neither in *Mott* v. *Consumers' Ice Co.* (73 N. Y. 547), nor in *Lynch* v. *Metropolitan El. Ry. Co.* (90 N. Y. 77), cited by the learned Appellate Division, was the law of punitive damages discussed, nor did the court below consider the question.

In *Mott* v. *Consumers' Ice Co.* (*supra*) the question was whether the driver of defendant's ice wagon ran into plaintiff's carriage maliciously or intentionally, or whether the collision was due to negligent and reckless driving on the part of defendant's servant.

Judge Allen, in writing for the court in this case, after alluding to the liability of the master for the acts of his servant, within the scope of his employment, said: "But if the servant goes outside of his employment, and without regard to his service, acting maliciously, or in order to effect some purpose of his own, wantonly commits a trespass, or causes damage to another, the master is not responsible, so that the inquiry is whether the wrongful act is in the course of the employment or outside of it, and to accomplish a purpose foreign to it. In the latter case the relation of master and servant does not exist so as to hold the master for the act. (*Croft* v. *Alison*, 4 B. & Ald. 590; *Wright* v. *Wilcox*, 19 Wend. 343; *Vanderbilt* v. *Richmond Turnpike Co.*, 2 N. Y. 479; *Mali* v. *Lord*, 39 N. Y. 381; *Fraser* v. *Freeman*, 43 N. Y. 566; *Higgins* v. *Watervliet T. & R. R. Co.*, 46 N. Y. 23; *Rounds* v. *D., L. & W. R. R. Co.*, 64 N. Y. 129; *Isaacs* v. *Third Avenue R. R. Co.*, 47 N. Y. 122.)"

The learned judge, after discussing the evidence in detail, said: "The whole evidence of the witness only tended to show gross carelessness on the part of the driver of the ice cart, and that was the most that the witness intended by the answer to either question. When the evidence is that the wrongful act was not within the general scope of the servant's employment, and so not within the express or implied authorization of the master, it is for the court to pass upon the competency of the evidence and for the jury to give effect to it."

29

It thus appears that this last case dealt only with the ordinary situation of the reckless driving of defendant's servant.

It is apparent that when the trial judge, in the case before us, having instructed the jury as to the law of compensatory damages, told them in effect that they had also the power, if they thought proper, to add to such sum, as they fixed for compensation, an amount for punitive or vindictive damages, the jury were furnished no rule under which these latter damages could be assessed; they were simply told that they had the power to award them.

We do not wish to be understood as expressing any opinion as to the merits of this case, or as laying down a rule as to its particular facts that will embarrass the court below on a second trial.

It will be for the jury to determine, upon the facts submitted for their consideration, whether the driver was acting within the general scope of his employment when he caused the arrest of the plaintiff, or was proceeding outside of that relation and to accomplish a purpose foreign to it.

If the jury find against the defendant, they will be at liberty to assess such reasonable compensatory damages to which the plaintiff is entitled by reason of the indignity of the arrest and the humiliation incident thereto.

Punitive or vindictive damages can be added to compensatory damages only when the case is brought within the rule so clearly laid down in the authorities we have discussed. This is a question for the jury to decide, if there is evidence for their consideration, under proper instructions by the trial judge.

The judgment of the Appellate Division should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, MARTIN and VANN, JJ., concur.

Judgment reversed, etc.