MORRIS HAHN, Appellant, v. INTERBOROUGH RAPID TRANSIT COMPANY, Respondent.

GUSSIE HAHN, Appellant, v. INTERBOROUGH RAPID TRANSIT COMPANY, Respondent.

First Department, November 22, 1918.

Railroads — liability of street railway company for assault upon passenger by ticket-chopper — instructions to jury — instructions based on circumstances not existing prejudicial — duty of carrier to protect passengers against assaults and insults of its employees.

Where, in an action by a husband and wife against a street railway company to recover damages for an assault alleged to have been committed on the wife by a ticket-chopper in the employ of the defendant, it appeared that after the wife had deposited tickets and was passing through the gate, the ticket-chopper struck her and grabbed her right arm and accused her of having dropped the wrong kind of a ticket, which she denied, and that there was no evidence that the ticket-chopper asked for or required time to investigate, the court properly instructed the jury that it was the duty of the carrier to treat passengers with consideration and to see that they were not assaulted and that no violence is used upon them by its employees, but that it had the right, through its employees, to call upon any one attempting to pass a ticket box without depositing a valid ticket to stop, and that when any one attempts to pass the box without depositing a ticket, the ticket-chopper is justified in using a reasonable degree of force to prevent his further progress.

But since there was no evidence that the ticket-chopper was in doubt as to whether good tickets had been deposited, there was no occasion for giving the jury any instructions with respect to his authority in such circumstances. They were prejudicial to the plaintiffs.

If the plaintiff, wife, deposited valid tickets, she was entitled to proceed without molestation from defendant or being charged with depositing a bogus ticket or required to buy another, and the defendant is answerable for the action of its ticket-chopper, whether willful or through error of judgment or otherwise, in seizing hold of and detaining her against her will, which was a violation of its duty, which is absolute, to protect passengers against assaults and insults of its employees.

APPEAL by the plaintiff in each action, Morris Hahn and Gussie Hahn, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 16th day of January, 1918, upon

the verdict of a jury, and also from an order entered in said clerk's office on the 8th day of January, 1918, denying plaintiff's motion for a new trial in each case made upon the minutes.

*Monte London* of counsel [*London & Davis*, attorneys], for the appellants.

*B. H. Ames* of counsel [*Frederick Allis* with him on the brief; *James L. Quackenbush*, attorney], for the respondent.

LAUGHLIN, J.:

The plaintiffs, who are husband and wife, bring these actions to recover the damages they respectively sustained in consequence of an assault alleged to have been committed on the wife by a ticket-chopper in the employ of the defendant at the City Hall station of the Third Avenue Elevated railroad in violation of the duty owing by the company to Mrs. Hahn as a passenger. The actions were tried together. On the 10th day of August, 1915, Mrs. Hahn with her two children and others went to Coney Island for the day. They resided on the line of the Third Avenue Elevated railroad and on their way down went to the Brooklyn bridge, via that line. They returned about eight-thirty P. M. by the Brighton Beach line and alighted at the Manhattan end of the Brooklyn bridge and crossed the platform to take a Third Avenue Elevated train home. Mrs. Hahn, according to her testimony, stepped to the window of the ticket office and purchased two red tickets. She then joined a Mrs. Schaffer and the latter's maid, who were waiting for her at the gate, and accompanied by them proceeded to pass through the gate, depositing the two tickets and a third like ticket which she had purchased in the morning, as their fares. The testimony offered in behalf of the plaintiffs tends to show that after she thus deposited the tickets and was passing through the gate the ticket-chopper struck her on the chest and grabbed her right arm, stopping her, and accused her with having dropped a blue ticket, which would be a bridge ticket and which sold two for five cents, in the box and insisted that she could not go through without purchasing and depositing another ticket. She denied having put a blue ticket in the box. It

appears that other passengers became indignant and that the incident created considerable commotion, and finally the station-master directed the ticket-chopper to release Mrs. Hahn, and she was permitted to pass without the payment of another fare. The evidence tended to show that Mrs. Hahn's arm where the ticket-chopper seized hold of her was black and blue and that she suffered other injuries; and her testimony with respect to the purchase and deposit of the tickets and the assault is corroborated by that of other witnesses.

On the part of the defendant the ticket-chopper was called and testified that he was at the gate and that the plaintiff came along with two children and dropped three tickets into the box, one of which was a Brooklyn bridge ticket which was not good on that line; that he reached across in front of her and took her by the left arm and " put her back of the box; " that she then turned around and struck him and that the station-master came out and allowed her to go through; that he did not strike her or take hold of her violently; that she was in the passageway beside the box when he told her to stop and that she kept right on going and so he grabbed hold of her and put her out of the passageway by pushing her two or three feet from it and told her she could not go through until she dropped in another ticket, and that he had hold of her arm about a minute or a minute and one-half.

The learned counsel for the appellants contends that the verdict in favor of the defendant is to be accounted for by errors in the charge. The learned court instructed the jury that it was the duty of the carrier to treat passengers with consideration and to see that they were not assaulted and that no violence is used upon them by its employees; but that it had the right through its employees to call upon any one attempting to pass the ticket box without depositing a valid ticket to stop, and that when any one attempts to pass the box without depositing a ticket the ticket-chopper is justified in using a reasonable degree of force to prevent his further progress. Those instructions were sound and appropriate; but the learned court then went further and said to the jury: " I think I can go further and say that, even though the passenger had given up a genuine ticket, if the situation was one which justified a doubt, or if the ticket-chopper was

justifiably in a state of uncertainty in his own mind, as to whether a valid ticket had been given, he would have the right to accost, or to halt a passenger, and to request him not to go through upon the station, and if the passenger then refused to give an explanation, and persisted in passing through before there could be any inquiry the law would then justify the ticket-chopper in using such a reasonable degree of force to restrain the passenger from going through before such inquiry * * * had been made, as might be necessary, but no more."

An exception was duly taken to the instructions with respect to the authority of the ticket-chopper when in a state of uncertainty with respect to whether a passenger has deposited a valid ticket, and counsel for the plaintiffs requested the court to instruct the jury that neither the good faith nor motive of the servant of the carrier constituted a defense, and that when the relation of carrier and passenger is established the carrier is answerable to the passenger for the willful misconduct or negligence of its employees in the execution of the contract which it has undertaken with the passenger. The court thereupon stated that there was no question of negligence or negligent treatment in the case, and after further discussion between court and counsel with respect to the request, counsel took an exception to the refusal to charge it as made. The court thereupon said to the jury that what he wished the jury to understand was that although a passenger may have given a valid ticket, if the situation in which it was given, as for instance if there was a crowd and numerous tickets were flowing into the box, and the circumstances were such as to justify the jury in finding that a ticket-chopper of reasonable prudence and care would entertain a doubt as to whether there was or was not a valid ticket put in, then the law would justify him in arresting the passenger's further progress in order that he might have time to investigate before the passenger went further, and that if in such circumstances the passenger refused to halt, but pressed on, the law would justify the ticket-chopper in using such restraint as might be necessary to give the ticket-chopper an opportunity to solve the difficulty and ascertain whether the passenger was regularly there or not. To those instructions counsel for the plaintiffs likewise duly excepted, and he asked the court to charge

that there was no evidence that the ticket-chopper asked for or required time to investigate, to which the court replied that it was true that there was no evidence that he asked time to investigate, but that he testified that he called upon Mrs. Hahn to stop and only laid his hand upon her when she refused to stop, which was some evidence for the jury to consider.

There was no evidence that the ticket-chopper entertained any doubt with respect to whether Mrs. Hahn had deposited three good tickets or that he desired time to investigate the matter, either by questioning her or examining the tickets or otherwise. What he said and what he did indicated that he had reached a decision on the point, and he peremptorily and unceremoniously seized and pushed her back and to one side and demanded that she purchase another ticket before she would be permitted to proceed on her journey. There being no evidence that the ticket-chopper was in doubt, there was no occasion for giving the jury any instructions with respect to his authority in circumstances which did not exist in the case at bar and it is unnecessary to decide whether the instructions would have been proper in any event. They were most prejudicial to the plaintiffs and may well have led the jury to believe that they were not bound by the evidence in deciding the case and to determine the issues on an erroneous theory. (See *Gold* v. *Froman,* 175 App. Div. 815; *Carrington* v. *Holbrook, Cabot & Rollins,* 157 N. Y. Supp. 457; *Pemstein* v. *Freedman,* 161 id. 246.) The relation of passenger and carrier existed, and if Mrs. Hahn did deposit valid tickets for herself and for her companions she was entitled to proceed on her journey without molestation from defendant or being charged with depositing a bogus ticket or required to buy another, and the defendant is answerable for the action of its ticket-chopper whether willful or through error of judgment or otherwise in seizing hold of and detaining her against her will, which was a violation of its duty, which is absolute, to protect passengers against assaults and insults of its own employees. (*Lynch* v. *Metropolitan El. R. Co.,* 90 N. Y. 83; *Gillespie* v. *B. H. R. R. Co.,* 178 id. 347; *Busch* v. *Interborough R. T. Co.,* 187 id. 388; *English* v. *D. & H. Canal Co.,* 66 id. 454; *Hamilton* v. *Third Avenue R. R. Co.,* 53 id. 25.)

It follows that the judgment and order in each case should be reversed and a new trial granted, with costs to appellants to abide the event.

CLARKE, P. J., DOWLING, SMITH and SHEARN, JJ., concurred.

Judgments and orders reversed and new trials ordered, with costs to appellants to abide event.