Cady, J.
 

 The injury of which the plaintiff complained, was occasioned by the wilful act of Captain -Braisted, who had charge of the defendants’ boat, the Samson; and for such act, the supreme court held the defendants were not liable. (1
 
 Hill
 
 480.) It was proved on the last trial, that Mr. Oroondates Mauran was president of the said company, and one of the principal stockholders, and had the control and management of the business of the company as general agent. It was also proved, that before the injury complained of was done, Captain Braisted told Mr. Mauran, that the plaintiff’s boat, the Wave, had crowded him out of his course a few days before, and said she was a .much smarter boat than the Samson; that Mr. Mauran then said to Braisted, “
 
 if she ever- does that again, damn her, run into her, sink her, Braisted.”
 
 It was also proved that immediately after the injury, Mr. Mauran was asked “ whether he did not think it was unpardonable to allow his boat to run into and try to sink the Wave when so many people were on board of her ?” he said “
 
 damn him, I wish he had sunk him.”
 
 It is not easy to discover what was meant by these words, but if it be assumed that Mr. Mauran was the general agent of the company, and intended by these words to approve of the acts of the captain ; the question then is, is the company liable for a malicious and wilful trespass committed by the captain of its boat, and approved of by its general agent
 
 ?
 
 If the company be not so responsible, then the plaintiff ought to have been nonsuited, and the judge erred in his charge to the jury. He charged the jury to inquire “ whether Mr. Mauran authorized or gave his previous sanction to Captain Braisted’s running into the plaintiff’s boat, or assented to, or ratified it, when it was done. If he did, and at that time had the general charge and management of the defendant’s affairs, they are liable.” 1 can find no authority makingte, corporation liable for the wilful
 
 *482
 
 trespass of its general or special agent, or other than 1
 
 R. S. 2d ed.
 
 683, § 10, and that is only understood as making the owners of a steamboat liable for the penalty imposed by the 9th section. (1
 
 Hill,
 
 481.) Neither an individual nor a corporation, by appointing a general agent, authorizes him to commit a wilful trespass, or to authorize or approve of such a trespass, any more than such authority is conferred by the appointment of a special agent. Suppose a farmer directs a servant to take his wagon and horses and take a load of wheat to mill, and on the way to the mill the servant-wilfully drives the team and wagon over a man and breaks his leg, the farmer is not liable. That was decided in
 
 Wright
 
 v.
 
 Wilson,
 
 (19
 
 Wend.
 
 343.) Suppose the farmer has a large stock of cattle and horses, and carriages, and farming utensils of all sorts on his farm, and he appoints a general agent to manage and transact all business on and in relation to the farm and all things thereon for ten years, and the general agent was, in terms, authorized to employ such and as many servants as he pleased for the purpose of doing the work on and in relation to the farm ; and suppose this general agent should order one of the hired servants to take a load of wheat to mill on a wagon, and drive over and kill John Doe’s cow, if he found her in the road, and the servant should obey the order, and kill the cow, would the owner of the farm be liable for this wilful trespass ? A general agent, when he commits or orders a wilful trespass to be committed, acts without the scope of his authority, as much as a special agent would in committing or ordering the same trespass to be committed. The jury were charged that if the general agent assented to or ratified it (the trespass) when it was done, then the defendant was liable. Suppose that after the captain of the boat had committed the wilful trespass, the general agent had said, I approve of what the captain has done and wish he had sunk the steamboat Wave. This would have been a more distinct approval and assent than any which was proved, and yet would that have made the company liable ? When the captain committed the wilful trespass, the company was not liable, and could it be made liable after the & spass was committed by the declaration of its general agen'^t it he approved of what the
 
 *483
 
 captain had done, and wished that the captain had sunk the boat ? The general agent was appointed for no such purpose ; he was appointed to manage all the business of the company in the most advantageous manner for the stockholders, and not ‘to ruin them by his passionate and foolish declarations.
 

 As to public officers, the approbation by a superior, of a trespass committed by his inferior officer, renders'the superior a trespasser.
 
 (Van Brunt
 
 v.
 
 Schenck,
 
 13
 
 John. R.
 
 414.) In that case the defendant was surveyor of the port of New-York, and was sued for seizing and taking the schooner called the Nancy. W. Yan Beuren, a witness for the defendant, “testified that he seized the Nancy for a breach of the embargo laws, and immediately reported the seizure to the defendant, who approved of what he had done.” This the supreme court said “ was a complete ratification and adoption of the act of seizure, and put the defendant in the same situation as if he had himself made the seizure.” The defendant had an interest in the seizure. Had the schooner been condemned he would have been entitled to a part of the forfeiture. The defendant, while the schooner was under seizure, had used her to transport his goods from Hell-gate to New-York.
 

 In the case of
 
 Bishop
 
 v.
 
 Viscountess Montague, (Cro. Eliz.
 
 824,) the defendant’s bailiff took five oxen as for heriots due to the defendant, when there was not any due, without any command from the defendant; but she agreed thereto and converted the oxen to her own use. Two of the judges held that she was liable in trespass, but not in trover, and the other two judges held that she was liable in trespass or trover. In that case a trespass was committed and the property taken and delivered to the defendant. She accepted the property and appropriated it to her own use. She accepted the property which her bailiff had wrongfully taken for her, and thus affirmed his act as her own. So a person receiving stolen goods, knowing them to have been stolen, may commit felony; but if a man on hearing that a horse had been stolen from a neighbor, should say I am glad of it, I wish the thief had stolen two horses instead of one, he would not thereby incur the guilt of a felon or make himself a trespasser. A sheriff is responsible for the wrongful
 
 *484
 
 act of his deputy. He is answerable
 
 civiliter
 
 for tne extortion of his deputy.
 
 (McIntyre
 
 v.
 
 Trumbull,
 
 7
 
 John. R.
 
 35.) So a sheriff is liable in trespass for the act of his deputy in taking the goods of one man on an execution against another.
 
 (Ackworth
 
 v.
 
 Kempe, Doug.
 
 40.) But I can find no case where the principal has been made liable for a wilful trespass committed by a servant, because approved of by a general agent.
 

 I am therefore of opinion that the judgment of the superior court ought to be reversed and a new trial granted.
 

 Judgment reversed