By the Court.—Van Vorst, J.
This case has been twice tried. On the first trial, the plaintiff was non-suited at the close of his evidence, on the ground that he had failed to connect the defendants with the occurrence through which his injury was sustained. That there was nothing to show that Hand was acting in *252 the course or within the scope of his employment when the injury was done.
On an appeal to the general term, the judgment was reversed, and a new trial ordered. The general term holding, Barbour, Oh. J., delivering the opinion of the court, that ‘ ‘ upon the evidence, which was wholly uncontradicted, the jury might have properly arrived at the conclusion, that the handling of the standing bale by the clerk, in such a manner as to cause it to fall upon the plaintiff, was an act of negligence for which the defendants were responsible.”
The evidence on the second trial discloses the true relation in which Hand stood to the defendants, and the specific duties growing out of his employment, and its scope.
And if the act was done by Hand in the business of the defendants, and within the scope of his employment, the defendants would be liable for the injury the plaintiff sustained, by the pushing of the bale of cotton upon him, if the act was the result of a negligent or reckless performance of • duty on the part of Hand (Isaacs v. Third Avenue R. R., 47 N. Y. 122 ; Higgins a. Watervliet Turnpike Co., 44 N. Y. 23).
Hand’s duty, under his employment, was to take receipts for the cotton delivered. He had nothing whatever to do with the handling of the cotton, or its disposition on the pier. When cotton was taken from the vessel by the stevedores and laborers, it was separated into lots- by them for the different consignees, and owners, according to their marks. The cotton of each owner was placed by itself. And when the car-men of the owners came to remove the cotton, they took it from the pile as arranged by the stevedores. The delivery clerk had nothing to do with examining marks, nor in arranging the cotton in piles to be carted away, except in cases of missing bales, or bales *253 left over, or when a question as to marks arose, when bales were dimly marked. His duty was to take receipts from the carmen after the cotton had been taken by them from the piles set apart for their employers, and was loaded on the carts. If any examination of marks was necessary, it was to be made by him when the cotton was on the carts.
The cotton of Perkins, when taken from the vessel, had been separated from other cotton, and was piled by itself. This had been done by others charged with such duty, and with which Hand had no concern.
The carmen of Perkins commenced to draw his cotton on July 36, and on that day took away a considerable portion. They returned to their work on July 37. In removing their cotton, they had left a row of gome ten bales standing. They were at work removing the bales lying near the row, when one of the bales was pushed over by Hand, and plaintiff sustained the injury of which complaint is made. Hand has testified, and his evidence is corroborated by the testimony of others, and of which there is no dispute, that he had no occasion, within the scope of his duty, to examine this bale, or its marks. There was no question about this bale, or the row in which it was standing ; it was in the lot set apart to Perkins, and would in the end have been taken away by his carman. Examined as a witness for the defendants, Hand has given his reasons for pushing this bale over. I state them shortly. The day before, some loose' cotton was supposed to have been stolen, which led to inquiry.
His “natural curiosity,” so he states it, led him to look at these men in their performance on the pier, from the fact of cotton taken from them the day before. In walking around, he saw this row of bales standing. The cotton was theirs; the proper way would have been to have taken it away clear. He pushed over one *254 of the bales, because he wanted to see beyond it, audio pass through; when he pushed it, losing the support of the bales standing beside it, it fell towards the plaintiff, in a direction unexpected by him. In another portion of his testimony, he says that the allowing of a tier or row of bales to stand in this way was an old trick, and he wished to break it, and see beyond, as a matter of personal curiosity.
How, the evidence clearly shows that Hand was charged with no duty under his employment, or arising from its scope, to interfere with these bales. The handling and disposal of the cotton on the pier preparatory to its removal by the carman, was a duty cast upon the stevedores, in the defendant’s service, of which there were several in attendance.
Hand had no general oversight of the pier. Bodfish,. in the employment of the defendants, as general superintendent, to handle the cargoes of cotton, was on the pier, and had himself seen this tier of bales standing, and had not interfered.
As it was not within the duties of his regular employment as delivery clerk, Hand had been charged with no service in this direction. The pushing over the . bale required some effort. He “ stooped enough to get his weight on the bale to push it over.”. He knew at the time that the carman and his assistant were at work behind this row of bales. There was nothing in the circumstances which justified or called for any such act. It was as reckless as it was gratuitous. It was his own unauthorized act.
It would be a violent construction of the term duty,' to hold that such reckless act, the offspring of his personal curiosity, was within the scope of Hand’s employment, as disclosed by the evidence, or that the master should be visited with its consequences. The principle upon which a master is in general held liable for the *255 accidents resulting from the negligence of his servant, is that the act of the servant is the master’s act.
But that can be predicated only of the acts the servant was authorized to perform, either expressly? or by the nature of Ms employment, and when the servant acts outside of the duties of his employment, and without express directions, his act ceases to be that of the master, and the servant, and not the master, is liable for the consequences (Mali v. Lord, 39 N. Y. 381; Vanderbilt v. Richmond Turnpike Co., 2 N. Y. 479 ; McKensie v. Leod, 10 Bing. 385).
The charge of the learned judge on the trial contained a true exposition of the law on the subject.
But the motion of the defendant, for a dismissal of the complaint, made at the termination of the plaintiff’s evidence, and renewed at the close of the case, should have been granted, for under the views above expressed, and upon the evidence, there was no fact for submission to the jury, tending to connect the defendants with the commission of the injury.
Judgment reversed, new trial ordered, with costs to the appellant to abide the result. *
Sedgwick and Speir, JJ., concurred.