Phelon *v.* Stiles.

———————— • ◆ • ————————

SHELDON C. PHELON AND WIFE *vs.* DAVID H. STILES.

ELLEN PHELON *vs.* THE SAME.

A servant employed by a flour merchant to deliver his goods, having started out with a wagon load for different customers, left by the road-side several bags of bran, while he went upon a side road to deliver a quantity of flour, intending to take the bran on his return; his object being to save an unnecessary transportation of the bran, and thus to finish the delivery sooner and get time

to attend to some private business of his own.   Held that, in leaving the bags by the road-side he was to be regarded as acting in the master's employment, and that the latter was liable for an injury caused by the fright of a horse in being driven by.

ACTIONS of trespass on the case, for injuries from the negligent acts of the servant of the defendant; brought to the Superior Court in Hartford County.   The two cases involved the same facts and were tried together.   The court made the following finding of facts:

On the first day of November, 1872, Stiles was, and had for a long time been, engaged in selling flour and feed in Suffield.   He then had, and for more than a year before had had, in his employ one George H. Babcock, whose principal employment was to deliver the goods so sold by Stiles to his customers.   On that day, in the afternoon, Babcock took a load of twenty bags of flour and six of bran, the former to be delivered at a Mr. King's and the latter at a Mr. Smith's. Smith lived on a side road branching off from the road leading to King's, and when Babcock came to this side road he took off from his load the bags destined for Smith's and piled them up on the side of the road within the limits of the highway, and left them there while he went on to King's with the remainder.   While these bags were so remaining there Mrs. Samuel C. Phelon and Mrs. Ellen Phelon were driving along the road, and their horse being frightened at the bags ran away and threw them both out and injured them.

I find that the bags so left were an object calculated to frighten horses of ordinary gentleness; that the horse driven by the plaintiffs was of ordinary gentleness; and that the plaintiffs were not guilty of any negligence which contributed to the injury.

I find that Babcock placed the bags in the highway without the knowledge or express authority of the defendant, and for the purpose of so shortening the time to be occupied by him in delivering the goods as to enable him to return to Suffield in time to take a train for Hartford on the same day on his own private business.

If the defendant was liable to pay the damages so happen-

ing to the plaintiffs, I assess the damages at the sum of three hundred dollars in each case, and I reserve for the advice of the Supreme Court the question whether Stiles is liable for the damages so caused by the acts of Babcock.

*C. E. Perkins* and *J. W. Johnson*, for the plaintiffs.

1.   The bags left in the highway were an object calculated to frighten horses of ordinary gentleness. It is expressly found that they were so, and a recovery can be had for injuries caused by such an object. *Dimock* v. *Town of Suffield*, 30 Conn., 129.

2.   The bags were placed in the highway by the servant in the execution of his master's business, and the master must be liable for the injury caused in consequence. Shearm. & Redf. on Negligence, §§ 59, 63; *Harlow* v. *Humiston*, 6 Cowen, 189; *Thames Steamboat Co.* v. *Housatonic R. R. Co.*, 24 Conn., 54, 56; *Crocker* v. *N. London, Willimantic & Palmer R. R. Co.*, id., 265; *Corbin* v. *American Mills*, 27 id., 279; *Joel* v. *Morison*, 6 Car. & P., 501; *Patten* v. *Rea*, 2 Com. Bench, N. S., 606; *Duggins* v. *Watson*, 15 Ark., 118; *Weed* v. *Panama R. R. Co.*, 17 N. York, 362; *Milwaukee & Miss. R. R. Co.* v. *Finney*, 10 Wis., 388; *Corrigan* v. *Union Sugar Refinery*, 98 Mass., 577; Story on Agency, § 452 and cases cited in note 3.

3.   The defendant is not excused because the business was done in this way by the servant for his own convenience. Where a servant is employed to do a certain act and is specially forbidden to adopt a particular method of doing it, yet willfully adopts that method, the master is liable for the injurious consequences of such act. Shearm. & Redf. on Negligence, § 68; *Keith* v. *Keir*, Hay, 8, 30; *Garretzen* v. *Duenckel*, 50 Misso., 104; *Passenger R. R. Co.* v. *Young*, 21 Ohio S. R., 518; *Phila. & Reading R. R. Co.* v. *Derby*, 14 How., 468, 487; *Limpus* v. *London Omnibus Co.*, 1 Hurl. & Colt., 526; *Sleath* v. *Wilson*, 9 Car. & P., 607; *Barwick* v. *English Joint Stock Bank*, L. Reps. 2 Exch., 265; Story on Agency, § 452.

4.   If the acts done were in the course of the master's

business, the master would clearly be liable. But the defendant claims that, though the master would be liable if the agent had put the bags in the highway without any reason for it whatever, yet he is not liable if the agent left them there for his own convenience. The defendant must admit that the servant was in the course of his master's employment up to the time he stopped to take out the six bags, and from the time he had finished taking them out until he had returned and stopped to put them in again, and from the time he put them in until he reached his home. Was he not in the course of his employment at the time he was taking out and putting in the bags? The leaving the bags by the road side facilitated the business, for it lessened the load the horse had to draw. "Where a servant is allowed by his master to combine his own business with that of his master, or even to attend to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured by his negligence, but the master will be held responsible unless it clearly appears that the servant could not have been directly or indirectly serving his master in the act, the negligent performance of which caused the injury." Shearm. & Redf. on Negligence, § 63; *Patten* v. *Rea*, 2 Com. Bench, N. S., 606; *Whatman* v. *Pearson*, L. Reps. 3 Com. Pleas, 422. "The true ground upon which a master avoids liability for most of the willful acts of his servant when unauthorized by him, is that they are not done in the course of the servant's employment. When they are so done the master is liable for them." Shearm. & Redf. on Negligence, § 65; *Howe* v. *Newmarch*, 12 Allen, 49; Story on Agency, § 456.

*W. C. Case* and *S. A. York*, for the defendant.

1. The foundation of the defendant's liability, if he is liable, must be the relation of master and servant, and therefore the preliminary enquiry is, did that relation exist between Stiles and Babcock when the act in question was done? There is no express finding of the existence of this relation. For aught that appears, Babcock may have been contractor,

agent or servant.   The language is equally descriptive of each of these relations, and the rules of law as to Stiles's liability, in the several cases, are widely and radically different.   If, however, the relation claimed is sufficiently established, the question of liability still recurs, for a master is not liable for all the acts of his servant.

2.   A master is liable only for those acts done "in the course of the servant's employment," or "within the scope of the servant's authority."   To render the master liable the act must have been done by the servant *while actually engaged* about his master's business, and an act done to *perform* the master's business.   Further, it must be an act done in the use of *usual* and *contemplated* means.   *Crocker* v. *N. London, Will. & Palmer R. R. Co.*, 24 Conn., 265; *Thames Steamboat Co.* v. *Housatonic R. R. Co.*, id. 40, 56; Story on Agency, §§ 56, 97.   Further still, if the nature of the employment contemplates only *lawful* means, the act must be *lawful*, that is, one which the master, if present, could lawfully and properly do.   Bac. Abr., "Master & Servant;" Story on Agency, § 11; Shearm. & Redf. on Negligence, § 61; *Mali* v. *Lord*, 39 N. York, 381, 385; *Isaacs* v. *Third Ave. R. R. Co.*, 47 id., 122, 129; *Poulton* v. *London & Southwestern Railw. Co.*, L. Rep. 2 Queen's Bench, 534; and the two cases in 24 Conn. before cited.   Again, it must *always* be an act done by the servant solely and purely for the master, and not in any respect for himself.   *Croft* v. *Alison*, 4 Barn. & Ald., 590; *Limpus* v. *London Omnibus Co.*, 1 Hurl. & Colt., 526.   So that the same act—that is, the same so far as the third person injured is concerned—may or may not be within the "*scope of the servant's authority,*" the test being the motive, purpose and intention of the servant.   Why is it that the courts have held, over and over again, that the master is not liable for the willful, wanton and malicious acts of his servant?   Because in the commission of such acts the servant was not representing the will of his master—was doing the acts with a motive, intention, and for a purpose of *his own*.   *Corbin* v. *Am. Mills*, 27 Conn., 279; *Wright* v. *Wilcox*, 19 Wend., 343; Reeve's Dom. Rel., 361, and note in 3d ed.   And *any* act

that proceeds from the will of the servant alone, done to accomplish a distinct and independent purpose of the servant, falls within the reason of the same rule and must be tested by it. *Isaacs* v. *Third Ave. R. R. Co.*, 47 N. York, 127.

3. Let us now apply this rule to the act which occasioned injury to these plaintiffs. Babcock's employment was the delivery of his master's goods to his master's customers, and the scope of his authority embraced only the *means appropriate* and the *acts necessary* for the performance of this work. Moreover the employment was *lawful*, and neither required nor contemplated the use of other than strictly *lawful* means. What were the usual and contemplated means and acts? Loading the goods, transporting them to the customers, using for that purpose the team furnished by his master, there unloading them, and returning the team to his master's premises. Now the specific act complained of was the depositing of certain of these bags in the highway; an act unnecessary, extraordinary and unlawful. It was not abuse of authority— not the improper doing of a proper and necessary act—but usurpation of authority—the doing of an unauthorized and utterly improper act; it was not *negligence*, but *willfulness*. It was unauthorized, because the course of his employment contemplated no such act, and no case can be put in which he would have had implied authority to deposit the bags in the highway. But it was *more* than willfulness. It was a willful act done by the servant "in order to effect some purpose of his own." The servant substituted his own purpose for that of the master, and so far abandoned his employment. It is no answer to say that the servant intended to return and resume his master's work, and that he still had in mind the ultimate delivery of the bran. The moment he left the bags in the highway he stepped aside from his master's employment—subordinated and postponed his master's service to his own; and consequently the relation of master and servant, as to that particular act, never existed. Nor is it any sufficient answer to say that the act directly tended to *facilitate* the execution of the master's work; for even if the act is done *solely* to facilitate the master's business, it does not certainly

follow that the master will be liable. Much less will the master be liable where the facilitation of his business is a secondary and minor consideration. The act comes clearly within the rule as claimed by us, and not within any exception. It was the act of the *servant* and not the act of the *master*, either in reality or in law, and to hold the master liable for its consequences would be to obliterate the line that circumscribes the master's liability and protects him from the wantonness of his servant.

4. If the court should consider the relation of master and servant as existing in this case, there is a further reason why the master is not liable for the act of the servant which caused the injury. The act—the leaving of the bags in the highway, in a position to endanger public travel—was a public nuisance, and therefore a misdemeanor. *State* v. *Great Works Milling Co.*, 20 Maine, 41. By the law of this state such an act is a common nuisance. Gen. Statutes, p. 253, sec. 1. To make the master liable for the illegal and unnecessary act of the servant, the servant must have express or implied authority to do the act causing the injury. *Isaacs* v. *Third Av. R. R. Co.*, supra; *Crocker* v. *N. London, Will. & Palmer R. R. Co.*, supra. The servant had no express authority to leave the bags in the place in question. A servant can have no implied authority to do that which it could not be lawful under any circumstances for either him or his employer to do. Shearm. & Redf. on Negligence, § 61; *Lyons* v. *Martin*, 8 Adol. & El., 512; *Poulton* v. *London & Southwestern Railw. Co.*, supra; *Thames Steamboat Co.* v. *Housatonic R. R. Co.*, 24 Conn., 40; *Church* v. *Mansfield*, 20 Conn., 284; 2 Hilliard on Torts, ch. 40, sec. 6 *a*.

PARK, C. J. The same principles of law apply to both of these cases, and therefore they will be considered together.

The defendant claims that the court below has not found that Babcock was the servant of the defendant. We think there is no foundation for this claim. We construe the phrase, "had in his employ one George H. Babcock," as meaning that Babcock was in the employ of the defendant as a hired servant.

The principal question in the case is, whether Babcock in depositing the bags of bran intended for Mr. Smith by the side of the highway, and leaving them there until his return from Mr. King's, where he went to deliver the bags of flour, was engaged in the business of the defendant in the regular course of his employment.

The defendant was a flour and feed merchant, and it was his practice to deliver his merchandise at the residence of his customers. Babcock was employed to make delivery, and, on the occasion in question, started with his bags of flour and bran, sold by the defendant to King and Smith, to deliver them to these parties in the regular course of his employment.

The question then is, was Babcock engaged in the defendant's business while depositing and leaving the bags by the side of the road?

The defendant claims that those acts were performed by him on his own account; that he was desirous to take a train for Hartford later in the day, on his own private business, and that he left the bags by the roadside to enable him to make his delivery more rapidly and return earlier, so that he could accomplish his purpose.

But what business of his own was he then doing? He was not then attending to private business in going to Hartford. That was to be undertaken later in the day. He left the bags to expedite the delivery. Did it make the business his own because he despatched it more speedily than it would naturally have been done? He was sent by the defendant to deliver the flour and bran. Did he do any thing else than deliver them? His whole object in leaving the bran by the side of the road was to gain time. Suppose he had driven the horse with such speed as amounted to carelessness in order to gain time, and had injured a person by so doing, would he be transacting his own business while driving so rapidly, so that the defendant would not be liable? Suppose he had left the bran out of consideration for his horse, and the same result had followed, would the defendant be excused? He was under the necessity of taking the bran to Mr. King's, or of leaving it by the side of the road until his return; suppose he had

taken the latter course without any special object in view, would it make any difference in the case? We think all that can be said of the matter is, that Babcock performed the defendant's business in delivering the bran in a shorter time than he would have done, had he not intended to go to Hartford later in the day; and certainly the rapidity with which the business was transacted cannot operate to excuse the defendant.

The defendant further claims that the bags, left as they were by the side of the road, became a public nuisance, and that the leaving of them was therefore a public offence, and that he can not be liable for such an act of his servant. But Babcock did not intend to create a nuisance. The case does not find that he intended any harm. All that can be said is, that he negligently left them while performing the business of the defendant, and for such negligence the defendant is of course liable. We think there is nothing in this claim.

We advise judgment for the plaintiffs.

In this opinion the other judges concurred; except FOSTER, J., who dissented.