CHARLES H. McCANN, PLAINTIFF IN ERROR, v. THE CONSOLIDATED TRACTION COMPANY, DEFENDANT IN ERROR.

1. If a servant is acting in the execution of the orders of his master, and by his negligence causes injury to a third party, the master will be responsible, although the act of the servant was not necessary for the proper performance of his duty to his master or was even contrary to the orders of his master.

2. Anyone who undertakes to propel a street railway car in a condition in which a reasonably prudent man would apprehend that it would frighten horses, is bound to employ reasonable means to prevent injury to persons riding or driving along the street.

3. Where black coats were hanging on a projection at the side of a street water sprinkler operated by electricity by, along and on the tracks of an electric street railway, and the coats, by waving to and fro in the wind, or by operation of the car sprinkler along the tracks, frightened a well-broken horse of gentle disposition, and caused injury to the plaintiff, who was thrown from his carriage, the question whether the employes of the defendant, the street railway company, were in the exercise of reasonable care to prevent injury in operating such street car sprinkler, and the consequent liability of the company for the injuries to the plaintiff, is a question which the trial court must submit to the jury for their determination, even though it be that the coats belonged to such employes and were by them hung upon the projection of the car. The car being in such a condition as to cause fright to the horse and consequent injury to the plaintiff, it became a question for the jury to determine whether the defendant company was negligent in the performance of its duty to exercise reasonable care, by its servants, in the use of the public street, by operating the car whilst in this condition.

4. *Quære.* Can the operation of a street railway car, painted a conspicuously bright and attractive color, along a public street, causing fright to a horse, with injury resulting therefrom, constitute negligence on the part of the street railway company and render it answerable for injuries resulting from such cause?

On error to Essex Circuit.

For the plaintiff in error, *Howard W. Hayes.*

For the defendant in error, *Joseph Coult.*

The opinion of the court was delivered by

LIPPINCOTT, J.   This is an action to recover damages for personal injuries. The defendant in error, the defendant below, operates an electric street car line of railway in the city of Newark. On the line of its street railway and on the tracks thereof the defendant company, at times, for the purpose of allaying dust, operates a water sprinkler. This car or tank is propelled by electricity and operated and managed

by a motorman and one or two other employes of the defendant. It is a car upon which a large tank of water is placed.

On August 11th, 1895, the plaintiff in error was driving a horse attached to a low-top buggy along Washington avenue, one of the streets upon which the car was being operated, when his horse took fright at the car, became unmanageable and turned sharply around and threw the plaintiff out of the buggy and severely injured him.

At the conclusion of the evidence on the part of the plaintiff, the trial judge, on motion of defendant, directed a nonsuit.

The evidence of the plaintiff shows that the horse was a well-broken animal and of a gentle disposition, and although very often, both day and night, it had been driven on the streets in the presence of the ordinary electric cars, had never before become frightened by them.

The plaintiff was driving along Washington avenue to the north, whilst the sprinkling car was approaching from the opposite direction. When about twenty-five feet apart the horse became frightened. The plaintiff, in his evidence, says that the car was "an enormous big tank they had on trial there, painted yellow." The evidence also shows that, upon a projection of the car at or near the rear thereof, there were hanging two black coats, which, by the motion of the car, were caused to swing to and fro and wave in the air something like a flag. The plaintiff describes them as a blanket which kept swinging out. Other witnesses speak of the objects as coats hung upon a projection from the side of the car at the rear thereof, which, from the motion of the car, swung to and fro. An ordinary electric car was going in the same direction as the plaintiff, whilst the tank car was approaching in the opposite direction. The cars passed each other, and when the tank car came in view the horse stopped, turned sharply around and threw the plaintiff out. The horse, after so turning around, became at once manageable and the plaintiff was afterwards driven home in the buggy. The plaintiff testifies that the swinging coats on the sprinkler scared the horse. The plaintiff, with the horse, on this same day had

passed the ordinary electric cars, to which the horse had paid no attention.

Some evidence was admitted, over objection, to show that the car was in the condition, both by reason of the bright yellow color and because of the moving coats thereon, calculated to frighten an ordinary, well-broken horse.

It is not here intended to consider the admissibility of the evidence that the color of the car was calculated to frighten horses, and it is not deemed in any sense to have been the cause of the accident to the plaintiff in this case.

Upon this motion to nonsuit, it must be taken as an indisputable conclusion that the black coats were hanging on the projection of the sprinkler, waving to and fro; and whether the operation of the sprinkler in this condition, by the employes of the defendant in charge of it, constituted negligence, causing the horse to be frightened and consequent injury to the plaintiff, was a question which should have been submitted to the jury.

The defendant's right to use a sprinkler upon its tracks for lawful purposes, cannot be denied. It has as much authority in law to use the sprinkler as it has to operate its ordinary traction cars, but its use of the highway in this manner must be exercised with reasonable care, and thus so far protect from injury others who are in the lawful use of the street, and this reasonable care is as well applicable to the condition in which the cars are operated as to the mere act of operation or propulsion along the street. If the sprinkler was in a condition calculated to frighten the horse and thus cause injury, it certainly became a question for the jury to determine whether the defendant had neglected to exercise reasonable care in this respect or not.

The liability for injuries resulting from horses being frightened by unusual sights in the highway, caused by a defendant, has been distinctly recognized, and the question whether the defendant was making a negligent use of the highway to the injury of the plaintiff, was one which required that the learned trial judge submit it to the jury.

There was a contention of the plaintiff that the conspicuous color of the sprinkler caused the fright of the horse and injury. This cause of liability has been suggested in some cases (*Jeffrey* v. *St. Pancras Vestry*, 63 *L. J., Q. B.* 618), but this contention under the evidence here has not been considered, because the trial judge directed the motion to nonsuit upon the assumption that it had been established that the swaying of the coats caused the fright of the horse and consequent injury to the plaintiff. The nonsuit by the trial judge was based upon two grounds—*first,* that there was no evidence that the coats were owned by the employes of the defendant operating the car; and *secondly,* if they did belong to such employes, still the act of hanging them upon the projection at the side of the sprinkler was not an act authorized by the defendant company, nor was it an act done in the course of the employment of the servants of the defendant in operating the sprinkler, and therefore no liability on the part of the defendant had been established.

. The gravamen of the action was that the sprinkler was being operated by the employes whilst in a dangerous condition—that is, in a condition calculated to frighten the horse. There is no evidence as to who hung the coats upon the projection, but the fact is well established that they had been hanging in this condition for some time previous to the time of the accident and the car was being operated with them in this position. It would seem as if it was not material whether these coats were placed there by the defendant company, by its employes or by a stranger, so long as the existence of them, in this position, created a dangerous situation, of which the employes of the defendant had knowledge and still continued to operate the car. The fact is that they were upon a car sprinkler of the defendant company which was being operated by its employes, who were bound to the exercise of reasonable care in its operation and thus protect others from injury. It was conceded on this motion that a car with these coats swaying upon it was calculated to frighten a well-trained horse of gentle disposition; but whether conceded or not on this

motion to nonsuit, the fact must be considered, and it certainly remained for the jury to determine, whether reasonable care had been exercised in the operation of the sprinkler. Besides, the master is liable for all incidental acts of his employes in the course of his employment, and if the coats were worn by the motorman or other employes as necessary to be worn in the work of operation of the sprinkler, then the act of hanging them upon this projection was an act incidental to their employment and would render the company responsible for such an act; and if such an act created a dangerous condition in its further operation, there is no known rule of law to be invoked to protect the defendant from the responsibility for the injurious results of such operation; and, generally speaking, the defendant company owed the duty to the plaintiff to exercise reasonable care to keep the sprinkler in a condition that injury should not arise to others, and if its employes used it when it was in a dangerous condition, or they themselves, in operating it, did that which rendered it dangerous, the defendant company became liable for the consequences. *Phelon* v. *Stiles*, 43 *Conn.* 426. In these respects the question for the jury would have been whether reasonable care had been exercised, and it is this question which, under this evidence, should have been submitted to the jury. *Comben* v. *Belleville Stone Co., ante p.* 226, and cases cited.

In *Mallory* v. *Griffey,* 4 *Nor.* 275, the question whether the fright of a horse was occasioned by a large stone along the highway, and whether it was calculated to frighten an ordinary, quiet and well-broken horse, and whether the defendant was negligent in placing such stone there, was left to the jury.

*Jeffrey* v. *St. Pancras, supra,* was a case where a steam roller frightened plaintiff's horse by puffing out steam. The question of recovery was held to have been properly submitted to the jury. In this latter case, Mr. Justice Collin, speaking of the construction of a carriage for use on a highway, says: "But, on the other hand, if he has his carriage constructed and painted in such a manner as to be very conspicuous, indeed it might then become a nuisance."

Liability has been established where a horse was frightened by a plough being left alongside a public road (*Harris* v. *Mobbs,* 3 *Exch. Div.* 268) ; where the noise and appearance of a steam engine were calculated to frighten horses (*Watkins* v. *Reddin,* 2 *Fost. & F.* 629, 634).

In *Phelon* v. *Stiles,* 43 *Conn.* 426, the servant, in delivering bran for his master, left several bags by the roadside, his object being to save unnecessary transportation and to give him time to attend to some private business of his own, but it was held that he was acting in his master's employment, and was liable for an injury caused by the fright of a horse caused by the bags of bran.

In *Howe* v. *Young,* 16 *Ind.* 312, the plaintiff's complaint averred that his horse was frightened and his buggy damaged by the defendant driving his horse and wagon along the highway in a reckless manner. On demurrer the complaint was held good. *Ell. Roads & Sts.* 624.

The general rule is a very clear one, that the master is liable for any act of his servant done within the scope of his employment, and " if a servant is acting in the execution of his master's orders, and by his negligence causes injury to a third party, the master will be responsible, although the servant's act was not necessary for the proper performance of his duty to his master or was even contrary to his master's orders. *Sm. Mast. & S.* (*Blackstone ed.*) 295, and cases cited.

The case of *Walton* v. *New York Central Sleeping Car Co.,* 139 *Mass.* 556, is cited as supporting the trial court in this nonsuit. That was a case where the porter of a drawing-room or parlor car threw a package or bundle containing soiled clothing and other articles from the train. Arrangements by the porter had been previously made that some person at the place should pick up and take care of the package for him. The package struck the plaintiff and injured him. It was held that the act of the porter was not the act of the company nor in the course of his employment, but for his own convenience. But the distinction between this case and the

one at bar is clear.    In that case the porter was not operating a car in a dangerous condition nor a car which he had rendered dangerous by his act, both of which instances would have been in the course of his employment, nor was his act incidental to his employment, but an act for his own convenience solely—as much so as if he had no connection whatever with the car.

One other ground is urged in support of the nonsuit, and that is that the proof of negligence varies from the averments of the declaration, but it is sufficient to say that the rulings of the trial court excluded any motion for amendment which the plaintiff could have been permitted to make.

For these reasons I shall vote to reverse the judgment of nonsuit.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, DEPUE, DIXON, GARRISON, GUMMERE, LIPPINCOTT, MAGIE, VAN SYCKEL, BARKALOW, BOGERT, DAYTON, HENDRICKSON, NIXON.    13.