## LEWIS S. AYARS v. THE CAMDEN AND SUBURBAN RAILWAY COMPANY.

Submitted March 20, 1899—Decided June 12, 1899.

Where an electric car, running upon and along a public highway at the ordinary and usual rate of speed and without lessening the same, runs into and through a pool of water on the tracks of the railway, thereby throwing the water up, out and in front of the car, and up, out and upon the front and sides thereof, and causing, by so running through such water, an. unusual, loud, roaring and hissing noise by reason of the water being gathered and hurled around and through the trucks and wheels of the car and thrown therefrom, and so causing a horse driven by the plaintiff along the highway to become frightened and uncontrollable and to run away, throwing the plaintiff from his carriage and injuring him, a case is presented which requires its submission to the jury upon the question whether the railway company, by its servants operating such car, has exercised reasonable care to protect the plaintiff from injury in his use of the highway. The case of *McCann* v. *Consolidated Traction Co.*, 30 *Vroom* 481, followed and the principles established applied.

On rule to show cause why verdict for the plaintiff should not be set aside.

Before MAGIE, CHIEF JUSTICE, and Justices GARRISON, LIPPINCOTT and COLLINS.

For the plaintiff, *Henry S. Scovel.*

For the defendant, *E. Ambler Armstrong.*

The opinion of the court was delivered by

LIPPINCOTT, J. The plaintiff in this action was, on March 21st, 1898, about ten o'clock in the forenoon, driving his horse and carriage towards Camden, along and upon the Haddonfield turnpike, a public highway. The defendant was, by its motorman and conductor, running an electric car on its railway tracks on such road, in an opposite direction, towards the plaintiff, and as the car approached the plaintiff his horse

took fright and ran away, ran, off a slight embankment on the road, came in contact with a trolley pole, upset the carriage and threw the plaintiff out and injured him.

The evidence on the part of the plaintiff shows that he saw the car coming towards him at some distance, running at its usual rate of speed, which is, by some of the evidence, indicated to have been quite rapid at this part of the highway. There is proof that at or about the point of the accident there existed a pool of water in the road and over the tracks of the railway, somewhere about one hundred and fifty feet long. The plaintiff saw this pool there, and there was no difficulty on the part of the motorman of the car seeing it. The pool of water did not extend over that portion of the road along which the plaintiff was traveling. The plaintiff saw the pool when he was about sixty feet away from it, and at that time the car was about one hundred and fifty feet away from the other end of it, both the plaintiff and the car at the same time approaching it. The car, without lessening its speed, according to the evidence of the plaintiff, ran into the water. The plaintiff was then close to or beside the other end of the pool. As the car ran into the water the horse showed signs of fright, but the car continued to proceed through the water towards the plaintiff at about the same rate of speed. As it entered and proceeded it threw the water upwards and outward, both in front and on the sides of the car, in different directions. The running of the car through the water caused an unusual, loud, roaring and hissing noise by reason of the water being gathered and hurled around the trucks and wheels. The horse became more frightened by the noise and flying water as the car proceeded, and as the car reached about the point of the accident, still running in the water, the horse reared up, and as he came down he turned around on the side of the wagon, then gave an unusual jump, ran off the slight embankment and ran against the trolley pole, upset the wagon, threw the plaintiff upon the ground—the horse was also thrown down- and the plaintiff was quite seriously injured. The car stopped about

opposite where the accident occurred. It was shown that it had rained the night before and during the morning—in fact, raining at the time of the accident—and thus the pool of water was formed on the car tracks. It was shown in the evidence of the plaintiff that the horse was accustomed to the ordinary operations of these cars and had never before been frightened by them, and that he had stood unhitched whilst they were passing without any fright. The plaintiff describes the flying water and the noise as "a loud noise, a roaring noise, an unusual one;" and again, "as the wheels passed through the water it threw each way, both outside, and would throw it inside, until the two waters met, and threw it out that way [indicating], and threw it ahead." He further testifies that he was managing the horse in the usual manner, and that it was not a hard horse to control. He testifies that the horse became frightened at once the car entered the water, yet the car continued to run through it in the same manner until it passed the point of accident; and again, that it did not slacken its speed after the horse became frightened or after it entered the water. He also testified that there were no obstructions whatever to prevent the motorman seeing the water, or ahead of him to the point where the plaintiff was driving along the road.

There is some other evidence on the part of the plaintiff as to the existence of the pool of water on the car tracks, other evidence showing that the horse was accustomed to the ordinary use of such cars, and that their operation had not before this time scared it, and evidence of the injuries inflicted upon the plaintiff by the accident.

A motion to nonsuit was made on the two grounds—first, that no negligence on the part of the defendant had been shown, and secondly, that the plaintiff himself had been guilty of contributory negligence.

Upon the latter reason hardly anything need be said. Up to this point no fact tending to show contributory negligence on the part of the plaintiff had been proved. All the facts show that he was driving along the road with ordinary care,

and his horse entirely within his control, nor did it at all appear that after the horse was frightened he failed to exercise all the care and control possible to avoid accident and injury to himself.

Upon the other point whether the plaintiff had shown negligence of the defendant, it is conceded that the car was running at an ordinary rate of speed, and reasonable care exercised in this respect under the usual and ordinary circumstances. The question still remains whether, under all the circumstances and the situation existing, the running of the car through this water at the ordinary speed was an exercise of reasonable care to avoid fright to this horse and injury to the plaintiff.

There was here an unusual circumstance and an unusual situation which was to be met with the exercise of reasonable care with reference to that circumstance and situation. If the circumstances were those of an ordinary character, then the ordinary speed of the car was the exercise of reasonable care; but if the circumstances were unusual, then the ordinary speed with which it was met might not be the exercise of reasonable care. The unusual circumstances or situation was the existence of this long pool of water upon the tracks, and the result of running the car through this pool of water at an ordinary rate of speed produced the unusual but natural result of creating a loud, roaring noise, and flying and splashing water, which, upon the motion to nonsuit, must be held to have caused the accident under the proof. It will be perceived that the plaintiff here was in no position in which he could avoid the effect of this unusual situation. The horse was not frightened at the ordinary rate of speed nor the ordinary noise which would arise from it. The horse was not frightened at the mere presence of the water, but the presence of the water, with the operation of the car in and upon it, produced an unusually loud noise, and the unusual action of the water, which were the causes of the accident, and therefore it was very properly said by the learned trial justice upon the decision of this motion against the defendant, that whilst the car might only be running at an ordinary rate of speed, yet

the question remained under the circumstances whether it was not the duty of the defendant to run through this pool of water at less than ordinary speed, and that this question, with the general one, whether reasonable care had been exercised in running into and through this pool of water, and whether the want of such care resulted in injury to the plaintiff, were questions to be determined by the jury. In the presence of the situation and its dangers to the plaintiff, did the motorman exercise the reasonable care which he should have exercised to protect the plaintiff from injury? This was for the jury to determine.

The liability for injuries resulting from horses being frightened by unusual sights and sounds in the public highway has been often upheld. *Jeffery* v. *St. Pancras Vestry*, 63 *L. J. Q. B.* 618; *McCann* v. *Consolidated Traction Co.*, 30 *Vroom* 481, and cases cited.

The motion to nonsuit was properly refused.

The evidence on the part of the defendant tended to show that the plaintiff had said to others that the fault of the accident was his own, because his horse had a hard mouth and difficult to control. This evidence is denied by the plaintiff upon rebuttal. There is also some evidence as to the character of the horse, that it was shy and skittish and had once run away. There is some evidence to show that it was not the fault of the horse on that occasion. There is no evidence which contradicts the evidence of the plaintiff that the horse was accustomed to the ordinary operation of these cars, and that he would stand in their presence or that they could be operated ordinarily without fright to it. There is also some other evidence to show that the volume of the water on the car tracks was quite inconsiderable, and that the noise from the operation was not as great as that alleged by the plaintiff; that some noise was caused by the operation of the car through it was admitted. The evidence of the conductor and motorman is that the car ran into and through the water at what is known as half speed, or at a much lessened rate of power than was ordinarily used. What rate of speed these terms in-

dicated is not very clear. They also testified when they saw that the horse was frightened they used every effort to stop the car and avoid the accident. The evidence of the defendant tended to a certain extent to disprove the case made by the plaintiff, and to establish facts from which inferences could be drawn antagonistic to the contention of liability on the part of the plaintiff, that the cause of his injury was the negligence of the defendant.

Under these circumstances and the condition of proof a verdict for the defendant could not have been directed, and such a motion was properly refused upon the application of well-established principles of law governing the trial and disposition of questions of fact.

The defendant does not at all contend that there were any erroneous admissions or rejection of evidence during the trial. An examination of it discloses that all the evidence admitted was competent and admissible, and that there exists no error in the rejection of evidence. The defendant expressly abandons any exceptions taken to the admission or rejection of evidence.

The learned trial justice charged to the jury all the requests made by the defendant with one exception.

The eleventh request was that the trial justice charge to the jury " that the frightening of the horse was not the proximate cause of the injury."

This was a question of fact for the jury, and the failure to charge the request was proper. To charge this would have been equivalent to a direction of a verdict for the defendant.

The proximate cause of the accident was left to the jury to determine.

The only other objection is an exception to the charge of the court upon the question of damage, that they might include in their estimation of damage " such loss of earnings as have actually been proved." This language was qualified by the further expression, " not found on guesswork or speculation." In this part of the charge the jury was perhaps too rigidly limited in their consideration of the estimation of loss

of earnings, for it confines that estimation to the past and precludes the jury from a consideration of the probability of loss in the future likely to arise in the future from the result of the injury of the plaintiff.

Upon well-established law the loss of earnings arising from such injuries is an element of damage for the consideration of the jury, based upon the evidence in the cause. The estimation of this class of damage, as well as to all other elements, must be limited to compensation, and this principle was given to the jury as their guide upon this question.

The evidence shows that there was a serious injury to one of the legs of the plaintiff, from which he will probably never recover. He was confined to his bed and house for a long time, and there has been much illness, suffering, pain and general impairment of health. These elements of damage and loss of earnings, and physician's and other expenses, render the award of the sum of $1,500 damage moderate and reasonable. The conclusion is that the damages are in no sense excessive.

The cause was properly submitted to the jury, and no reason appears why the verdict should be set aside or interfered with.

The rule to show cause is discharged, with costs.